LAND, J.
Plaintiff, alleging his employment for a term of five years,' and his discharge without just cause at the end of the first year, sued to recover $4,700, unearned' salary for the unexpired term, and $25 for balance of salary due for the month of November, 1902.
Defendant, in its answer, admitted the contract and the discharge, but averred that the discharge was justified by the grounds of complaint set up in the answer.
There was judgment for plaintiff as prayed for, and defendant has appealed.
In October, 1901, the defendant, a Texas corporation, desiring to establish a branch office and business in the city of New Orleans, entered into a written contract with plaintiff, of date October 18, 1901.
By the terms of this contract, plaintiff was employed by defendant company—
“To have entire control and management of the sale and placing upon the market of all of their oil marketable and to be sold in the City of New Orleans for a period of five years at a salary of one hundred dollars per mouth which is to be paid monthly.”
*81 The contract further provided that plaintiff—
“Shall in his management and control of said business of Southwestern Oil Company be subject to the orders and control of the management of the home office of said Oil Company in Texas.”
It was further stipulated that if the defendant company should sell out its interest to any other company or person or persons, or change its management to another company or corporation, the whole salary for the unexpired term should thereupon become due and payable.
The contract further provided as follows:
“The said Prank . Kenner shall give his entire time and attention to this said business of the Southwestern Oil Company nor shall he sell oil or do any like business for any other Oil Company, but shall be allowed the privilege of attending to his duties as a State Legislator.”
The business was inaugurated under this contract on November 1, 1901, under the management of the plaintiff, who had acquired a good reputation as a solicitor iu similar enterprises. Plaintiff was allowed from the beginning $50 per month for “expenses” incurred in soliciting business.
The business seems to have proceeded smoothly and satisfactorily until after July, 1902, when plaintiff was taken ill, and was absent from his place of business for five or six weeks. During this time the company was compelled to put a substitute in plaintiff’s place.
About September 1, 1902, W. E. Dixon was sent to assist plaintiff in conducting the business. Dixon was put in charge of the sales of lubricating oil, while plaintiff retained control of the sales of refined oil.
On September 11, 1902, Bonner, the manager of the company, wrote to plaintiff from Houston as follows, viz.:
“I have your favor of the 10th and am very much surprised to know that you are displeased at our having taken occasion to give a few orders in regard to our New Orleans Branch. We certainly could not consult you on these orders for the reason that we had no advice as to your address. Ton must remember that you have not been working actively in our behalf. since the Legislature met, some several months ago, and you went away without giving us any notice, and we certainly could not afford to let our business run along indefinitely without some attention from this end. We placed the horse at the disposal of Mr. Dixon, who is there working the Lubricating trade, and the horse will, of course, be at Mr. Dixon’s disposal until some other arrangements are made. However, Mr. Weir, will be in New Orleans in a few days, and will discuss these matters at length with you.”
Weir visited New Orleans, and, on bis return to Houston on September 22d, wrote plaintiff that his resignation was accepted. Plaintiff replied on September 24th that he had not resigned, and did not intend to do so. Weir’s explanation of his letter is that plaintiff insisted on the discharge of an employe, and threatened to resign if it was not done.
Weir came later to New Orleans, saw the plaintiff,' and, on his return to Houston, Tex., reported that he had made a contract of reemployment with plaintiff at a salary of $150 per month, without expenses.
Plaintiff wrote oh October 4, 1902, denying such re-employment, and stating that Mr. Weir had said that the company would abide by the original contract.
Weir was in New Orleans on October 18, 1902, and made an arrangement with plaintiff to meet him on that day at the Cosmopolitan Hotel. The evidence shows that both parties went to the hotel about the hour fixed, but, for some unexplained reason, did not meet.
Weir, on his return to Houston, reported that plaintiff made, but did not fulfill, his engagement, and the manager wrote plaintiff on the subject. On October 24, 1902, plaintiff replied that Weir’s statement was not true; explaining that he was at the hotel at the appointed time, and phoned the office in New Orleans that he would remain there for two hours. In his letter of Octo, ber 20, 1902, to plaintiff, the manager, Bonner, wrote that they would go back to the *83 original contract, discontinuing all allowances for expenses.
On October 28, 1902, the company wrote 'to plaintiff as follows:
“We beg leave to advise that it is absolutely essential that you should make to us your salesman’s report daily. Your reports of the 21st, 22nd and 23rd inst. came in the same mail and the same envelope.”
Plaintiff received this letter, but made no reply, and the company received no further reports.
On or about November 1,1902, plaintiff collected from the local cashier $25 for expenses. On the 13th of the same month the company wrote to the cashier in New Orleans that plaintiff was not entitled to any expense account, and not to allow him to draw on that account.
On November 28, 1902, the company wrote to plaintiff as follows:
“We beg leave to advise you that your failure to properly perform your duties at the New Orleans station readers it necessary for us to dispense with your services at the end of the month.”
At the close of the month, plaintiff made demand for payment of his salary, and received, under protest, $75; the amount received by him on expense account being deducted.
Undoubtedly there was dissatisfaction and friction between the parties during September and October, 1902, but on or about October 20th they both expressed the intention to abide by and carry out the original contract, which did not provide allowances for expenses. Plaintiff had lost considerable time through sickness, the business was .conducted at a loss, and it may be that the company desired to get rid of him and the long-term contract.
But on or about October 20, 1902, they concluded to stand by and carry out the original contract. We may therefore dismiss from serious consideration all grounds of complaint which existed prior to that date. The complaint that plaintiff maliciously circulated reports that defendant had sold out to the Standard Oil Company is not proven by a preponderance of the evidence.
The grounds, however, that plaintiff failed and refused to render daily reports as instructed in the letter of date October 28th, and collected expense money in disobedience of the letter of date October 20th, require our attentive consideration.
It is to be noted that, according to the terms of the contract, plaintiff was “subject to the orders and control of the home office * * * in Texas.” Hence it was his duty to obey all lawful orders of the company which employed him.
After having been local manager for some months, plaintiff advised the company to adopt a certain form of salesman’s report, intended for the use of solicitors or drummers. This system was adopted in July, 1901, but plaintiff himself made no report until September 15th, and from that date until October 23d, inclusive, he prepared daily reports, showing what work he had done in taking orders and soliciting business. The reports included both lubricating and refined oil, and detailed not only sales made, but names of parties called upon, and the reasons why orders were not secured. Thus the report of September 15, 1902, shows a sale of two barrels of lubricating oil to the New Basin Canal & Shell Road, and gives the names of six persons and companies called upon, and the result of each call or interview. The report of date October 23, 1902, shows a sale of three barrels of oil, and six calls on possible customers, from some of whom were obtained promises of futuie orders.
Weir, the secretary of the company, testified that the last report received from plaintiff bears date October 23, 1902, and that the original book kept by him shows that this was the last report made out in full; the report for October 24th being dated, but otherwise left a blank.
*85 Dixon testified that the hooks in the local office do not show any reports made by plaintiff after October 23, 1902.
Weir further testified that the company required similar reports from all their salesmen soliciting orders, and Dixon testified that he made such reports daily.
In his direct examination, plaintiff admits his default, and endeavors to excuse -it. We extract therefrom the following questions and answers:
“Q. When the home office wrote you to send those other salesmen’s reports, why did you not send them?
“A. I didn’t think it necessary, and I was the manager, and not a salesman.
“Q. If they had insisted upon your sending, would you have sent it, or not?
“A. I certainly would.”
In short, plaintiff received the letter of instructions, ignored it, and excuses himself on the grounds that he was manager, and not a salesman, and that the reports were not necessary.
Plaintiff seems to have forgotten that for more than a month he had made such reports regularly as a part of his duties, that his time belonged to the company, and that he was subject to its orders. Plaintiff had introducéd such a system into the conduct of the business, and, if it was applicable to other solicitors for orders, why was it not applicable to plaintiff when acting in the same capacity. As it was, the company for more than a month had no report from plaintiff as to his work in soliciting business. If during that time he obtained orders, or exerted himself to procure business, there is no record to show what was done, and his testimony on the subject is very vague and indefinite.
Plaintiff admits that he received the letter of October 20th, informing him that he would not be entitled to expense money in the future, and that early in November he drew $25 on expense account for that month. He testified that subsequently the cashier, Davidson, was instructed by letter to continue the allowance. Plaintiff testified that he saw and read said letter, but could not say whether it was written by Weir or Bonner, and that Dixon told him that he would see that plaintiff got his expense account, and, when he received the money, Dixon remarked that he had told him so.
Davidson testified that he had no special instructions to pay the money, but paid it on the original instructions to allow $25 on the 1st or 15th of each month, and received no order to the contrary until the letter of November 13th was received. When asked about the letter referred to by plaintiff, Davidson replied that he did not remember such a letter. Dixon, in rebuttal, did not deny the conversation about the expense money detailed by plaintiff in his testimony, and Weir did not testify in rebuttal on the subject. Although plaintiff had been notified that the expense account would be discontinued, the company gave no instructions to the cashier not to pay until November 13th. Under the evidence, we think that the company assented tacitly, if not expressly, to this particular payment.
But on this theory there is less excuse for plaintiff’s failure and neglect to make his usual reports. His plea that he was compelled to walk or pay his own expenses while soliciting for the company has no force until after November 15, 1902, when the payment of expense money was discontinued. He made no reports between October 23d and November 15th, while receiving this allowance. Under the circumstances, plaintiff’s persistent refusal or neglect to make said reports was just cause for his discharge. We cannot assent to the proposition that an employé may disregard the lawful orders of his employer, on the ground that the acts directed to be done are not necessary to the conduct of the business, or excuse himself on the plea that obedience to the orders was not insisted upon. Plaintiff, on receiving the letter of October 20th containing the request to continue his daily reports, did not even an *87 swer the communication. He was in the wrong in this matter, and failed and neglected to perform his duties. He therefore cannot demand the penalty accorded by law to the faithful servant who has been discharged without serious ground of complaint.
It is therefore ordered, adjudged, and decreed that the amount awarded by the judgment below be reduced from $4,725 to $25, and that, as thus amended, the judgment appealed from be affirmed; plaintiff and appellee to pay the costs of appeal.
MONROE, J., dissents.