LAND, J.
This case was dismissed on an exception of no cause of action. On appeal this court reversed the judgment and remanded the cause for further proceedings. Lloyd v. Dickson, 116 La. 90, 40 South. 542.
Plaintiff sued for damages for breach of an alleged contract by which the defendants obligated themselves to use their influence and support in favor of the plaintiff for the position of secretary and Southern manager of the Southern Insurance Company of New Orleans, for whose control the three parties were working in conjunction. Plaintiff alleged that he faithfully performed his part of the agreement, but that the defendants, on the eve of the successful completion of the project, threw him overboard, and took in a competitor of plaintiff in the insurance business, and agreed to make said competitor’s firm the manager of the Southern department of the company. The obligation of the defendants under the alleged agreement was to endeavor to secure the control of the company, and, having secured control, to carry out their contract with the plaintiff. 116 La. 92, 40 South. 542. Plaintiff alleged that the salary he was to receive as secretary was $3,000 per annum, and that the office of Southern manager of the company was worth $4,500 per annum. These sums plaintiff alleged represented the actual damages he had suffered by reason of defendants’ violation of their agreement. Plaintiff also sued for $2,500 as exemplary damages.
For answer the defendants pleaded the general issue. The case was tried, and there was judgment in favor of defendants, from which plaintiff has appealed. •
Plaintiff was an insurance agent in the *918 ■city of New Orleans. Dickson & Tweeddale was a firm of underwriters in the city of New York. After some correspondence and a personal interview, the three parties, in conjunction with two or three business men of Philadelphia, undertook to secure the control of the majority of the stock of the Southern Insurance Company of New Orleans. Tweeddale and one Wannamaker came to New Orleans, in March, 1905, and in conjunction with the plaintiff endeavored to secure options and to make the necessary financial arrangements to purchase a majority of the stock. Lloyd had but little money, and acted as a promoter of the enterprise. He, however, was to secure the co-operation of a responsible business man of New Orleans, who would take $35,000 of stock, on the promise of the vice presidency of the company. 1-Ie secured C. W. Robinson, who subsequently took the amount of stock specified. Tweeddale and Wannamaker failed on their part to make the necessary financial arrangements to margin the stock. Dickson came on, and in a short time, with the aid of C. W. Robinson and Albert Godchaux, secured a majority of the stock of the company. Under this arrangement Godchaux’s insurance firm was to have the agency for Louisiana and Mississippi. Plaintiff contends that this was a breach of defendants’ agreement with him. There seems to have been at first a tentative understanding that Lloyd was to be Southern general agent. Lloyd so testified, and is corroborated by Wyatt Ingram, of the Hibernia Bank4& Trust Company, who swore that Tweeddale and Wannamaker said that Lloyd was to be Southern manager.
After Wannamaker and his associates retired, plaintiff testified that Tweeddale said:
“We will make you secretary in charge of all the local business.”
Plaintiff admits that he and Storm agreed to take about '$20,000 of stock, but says that his position as secretary and agent was not dependent on his so doing. Storm’s testimony is to the effect that he and Lloyd were to be local and state agents on their taking and getting others to take $20,000 of stock. This was never done, but Storm made arrangements to take stock to the amount of $5,000. Lloyd does not seem to have made any definite arrangements to furnish his share. The surplus of $10,000, Storm testified, was to be carried by Tweeddale. The testimony of both defendants is to the effect that Lloyd and associates were to procure $30,000 of stock, and that Lloyd acknowledged his inability to respond. It appears that Tweeddale had offered the general agency to another party if he would take $20,000 in stock. In view of all the evidence, the plaintiff has failed to make out his case as to the general agency.
On the second branch of plaintiff’s demand, the evidence clearly shows that there was an understanding that plaintiff was to have the office of secretary if the syndicate succeeded in getting control of the company. Plaintiff rendered valuable services, based on assurances from Tweeddale that the office of secretary was to be his reward. This is virtually admitted by Tweeddale in his testimony. At the close of the deal Dickson gave out for publication the names of the proposed officers of the reorganized company. Dickson was to be president, Robinson vice president, and Lloyd resident secretary. This suit was brought as soon as Lloyd ascertained that the general agency had been contracted to the Godchaux firm. The office of secretary had not been promised to any other party, and in the nature of things could not be conferred until .the Dickson syndicate secured control of the organization, which was not until Pebruary, 1906. On the reorganization Dickson was elected president, and the old secretary was re-elected. Hence there could have been no actual breach of the *920 agreement to elect Lloyd until February, 1906, long after the institution of this suit. From another standpoint, the evidence does not show what damages the plaintiff has sustained by reason of the alleged breach of the agreement as to the secretaryship. The only evidence oh this point is that the salary of the secretary of the company is fixed on the basis of $3,000 per annum. If plaintiff had been elected secretary for one year at such a salary, and afterwards discharged without any serious ground of complaint, he might have claimed the salary for the unexpired term as a penalty under Rev. Civ. Code, art. 2749 (2720). But it has been held that this article is in the nature of a penal statute, and has no application to a contract for the letting and hiring entirely unperformed in all of its parts, and that for the breach of such executory contracts only actual damages can be recovered. Trefethen v. Locke, 16 La. Ann. 19. Our conclusion is that plaintiff should have been nonsuited on this branch of his case.
It is therefore ordered that the judgment appealed from be amended, by dismissing plaintiff’s demand for damages as to the alleged contract for the office of secretary of the Southern Insurance Company as in case of nonsuit, and that, as thus amended, said judgment be affirmed; defendants to pay costs of appeal.