(92 South. 706)

No. 23717.

## WELLS v. SHERRILL HARDWOOD LUMBER CO.

(June 5, 1922. Rehearing Denied by Division B July 1, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Compromise and settlement ⬤⇒12—Indorsement and collection of check bearing receipt in full settlement held not to release claim for wrongful discharge.**

Where an employer presented an account to an employee, in which he was credited with salary for two months, and which showed a balance for which a check was delivered, bearing on the back a receipt "in full payment of the within account," the employee's indorsement and collection of the check was not a settlement releasing the employer from the employee's claim for wrongful discharge.

2. **Master and servant ⬤⇒68—Right to wages not dependent on release.**

No principle of law or equity justifies an employer in withholding wages admittedly due, unless the employee will release the employer from all future responsibility under an unterminated contract of employment.

3. **Master and servant ⬤⇒41(1)—Statute as to recovery on wrongful discharge not repealed.**

Act No. 62 of 1914, § 1, prohibiting employers from requiring contracts by employees forfeiting their wages if discharged before completion of the contract, and providing that in such cases the employee shall only be entitled to wages to the time of discharge, must be construed in view of Const. art. 3, § 16, relative to the titles of acts, as applying only to lawful discharges or discharges for cause, and does not repeal Civ. Code, art. 2749, making an employer discharging a laborer without serious ground of complaint liable for the salary for the full term.

4. **Master and servant ⬤⇒30(3) — Discharge for not getting results held justified.**

Where one employing a sales manager for lumber plant was not getting results which it had a right to anticipate when it employed him, whether this was due to incompetency or inefficiency or other causes, there was serious ground of complaint, justifying his discharge under Civ. Code, art. 2749.

5. **Master and servant ⬤⇒30(3)—Sales manager's failure to get orders held not excused.**

If a sales manager's failure to obtain orders was due to the fact that much of his time was taken up with duties not pertaining to his employment, or the fact that the employer did not have sufficient stock on hand, he should have discussed these matters with the employer, with a view of remedying the situation, and, not having done so, could not set them up in a suit for wrongful discharge in explanation of his apparent shortcomings.

6. **Master and servant ⬤⇒41(1)—Statute as to recovery upon wrongful discharge held penal statute.**

Civ. Code, art. 2749, making an employer discharging a laborer without serious ground of complaint liable for the salary for the full term, is a penal statute.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Jerry Cline, Judge.

Action by James M. Wells against the Sherrill Hardwood Lumber Company. From a judgment for plaintiff, defendant appeals. Reversed, and plaintiff's demand rejected.

Borah, Himel, Bloch & Borah, of Franklin, for appellant.

S. W. Plauche, of Lake Charles, and Ped C. Kay, of De Ridder, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

LECHE, J. Plaintiff's suit is for the recovery of $3,333.33 alleged to be due by defendant under a contract of employment.

The defendant operates a lumber plant at Merryville, in the parish of Beauregard, and contracted with plaintiff to enter its service as sales manager, for the period of one year, at a salary of $4,000 per annum. Plaintiff assumed his duties under the contract on September 16, 1918. Two months thereafter, on November 16, 1918, he was attacked with influenza, a disease then prevailing as an epidemic through the country, and when he

recovered, about December 1, 1918, he received from defendant, a letter dated November 29, 1918, in which the following statements are contained:

"Dear Sir: I am leaving today for a week or ten days absence, and I do not see you in person because I do not want to disturb you while you are in such weakened condition on account of your recent illness, but no doubt before I get back you will begin to get back in condition for work again, and I do not see how you could take hold and do very much good unless I was here to direct you.

"I am not going to say anything to wound your feelings, but, sufficient to say, you cannot meet the requirements of sales manager for this company; therefore, I think it best that you look elsewhere for employment.

"Some great change has come over you since my association with you at Sherrill-Kings; it may be that you cannot control it, and it may be that you can; at the same time, you are unquestionably not qualified to meet the condition in this case. I believe that you will have to learn the game practically all over again.

"If you care to consider working in the capacity of office assistant, doing general work and try to prove yourself worthy of the position that you were engaged to fill, I would be willing to give you an opportunity, but on salary basis commensurate with what you are qualified to do.

"It has come to me more times than once that your family is very much dissatisfied and won't stay here, that you were going to leave as soon as you got well and this makes me feel that you will not be disappointed in receiving this letter. If you care to leave before I return it will be satisfactory and on my return I will effect a settlement with you.

"If you decide that you are willing to work for $150.00 to $175.00 per month you can make your arrangements to remain on the job and use the time of my absence getting yourself thoroughly recuperated so that you can discharge duties properly that will be expected of you, and I will put you to work on my return.
    "Very truly,
            "Sherrill Hardwood Lbr. Co.,
                    "By C. H. Sherrill."

As a result of that letter, plaintiff instituted the present suit, in which he claims that he was discharged without just and sufficient cause, and without any serious ground of complaint.

The defense is that plaintiff was discharged because he was incompetent, inefficient, and neglectful. As a further defense it is alleged that plaintiff had a settlement with defendant in which he accepted a check for $625.93 in full satisfaction of his claim.

From a judgment in favor of plaintiff defendant has appealed.

[1] The settlement pleaded by defendant took place on the 10th of December, 1918, and consisted of the presentation of an open account by defendant, in which plaintiff is charged for various items of merchandise and cash, and in which he is credited with two months' salary to November 15, 1918, and various other items, showing a balance due plaintiff of $625.93. A check was then handed to plaintiff, for the amount of this balance, and on the back of the check appear the following words:

"This check is hereby accepted by the payee in full payment of the within account and indorsed as follows."

The check was subsequently indorsed and collected by plaintiff.

There is no suggestion of an estoppel or of a discharge by accord and satisfaction, but merely a plea of settlement in full satisfaction. There is no evidence to show that plaintiff accepted this payment voluntarily, with a view of releasing defendant from all liability under the contract of employment. But defendant merely draws the inference from the fact that plaintiff signed his name under the quoted indorsement, that this constituted consent on his part to a complete release from all further liability under the contract of employment. We understand that the receipt thus indorsed on the back of defendant's check, is a stereotyped printed form used by defendant on all its checks designated and known as voucher checks. The words are intended to identify the account, in payment of which the check is given, and, so construing them in this case,

they simply mean that plaintiff has received payment in full of the account accompanying the check and no more, and this is not denied.

[2] Plaintiff testifies that he did not observe the indorsed receipt when he took defendant's check, and that at the time he was much in need of ready money. Even if he had seen the printed receipt when the check was handed to him, that could not have been construed as a waiver on his part of his rights, such as he understood them, to future compensation under the contract. There is no principle of law or equity justifying an employer to withhold from the employee the wages admittedly due by him to such employee, unless the latter will consent to release him from all future responsibility under an unterminated contract of employment. So that the giving of the check was not a waiver by defendant of any of its legal rights, nor was its acceptance by plaintiff the taking of an undue advantage over defendant.

[3] This defense, in our opinion, has no merit, and defendant itself was also of that opinion, for after the alleged settlement and before this suit was filed, in a letter to plaintiff of date December 14, 1918, in which it challenges plaintiff's right to recover at law under the contract, it made no mention of the pleaded settlement, although its line of defense is fully set forth in that letter. Another defense, suggested in argument, is that Act 62, p. 154, of 1914, has repealed article 2749 of the Civil Code; that plaintiff's right of action can only arise by virtue of the provisions of that article; and that, said article being repealed, plaintiff has no right of action to recover unearned wages or salary.

The article (2749, C. C.) obliges the employer to pay the whole of the salaries which the laborer would have been entitled to receive, had the full term of his services arrived, if he should discharge such laborer without any serious ground of complaint. This article has been held to apply to most contracts of employment, and is the law controlling this case. Act 62 of 1914 was enacted for the protection of employees against the enforcement of contracts whereby the employer might require them to forfeit wages due when discharged. Defendant, however, contends that the following provision at the bottom of section 1 of that act:

"But in all such cases said employee shall be entitled only to the wages actually earned up to the time of his discharge or resignation"

—repeals article 2749, C. C. Construing this provision in connection with the announced purpose of the act and the article of the Code, the word "discharge" is evidently used in the sense of lawful discharge or discharge for cause, otherwise the quoted provision would be unconstitutional and not covered by the title of the act as required by section 16 of article 3 of the Constitution. A statute should always be interpreted so as to give it constitutional life, especially when, as in this instance, such interpretation is reasonable and free from any strain. Adopting this constitutional construction makes the quoted provision effective in carrying out the purpose announced in the title of the act, and it is then in harmony and does not conflict with the article of the Code.

This defense therefore also lacks merit.

The third and serious defense in the case rests on the charges of incompetency, inefficiency, and negligence.

It is apparent from the testimony in this record that there was a serious conflict of opinion between plaintiff and defendant as to the nature and detail of the services which plaintiff was to render in the course of his employment. The parties agree that plaintiff was employed as sales manager, and they also agree as to the general purpose of such an employment, but after plaintiff had ac-

cepted defendant's offer and actually undertook to carry out his engagement under the contract plaintiff was impressed with the idea that he was called upon to do clerical and menial work entirely outside of his duties as sales manager, and defendant became equally convinced that plaintiff was too negligent and inefficient to be a successful sales manager.

These conflicting views on the part of the litigants brought on the rupture of which this suit is the sequel.

[4, 5] At the time that plaintiff was employed, our government was at war with Germany. All the able-bodied young men of the country had been drafted into the army, and labor, especially of a clerical character, was scarce. It was under these prevailing conditions that plaintiff was employed. Defendant was operating a large plant, and was anxious to promptly and profitably market its output. Yet after two months of employment, plaintiff had only secured two orders, one for railroad ties, which defendant was not in a position to fill, and one for pine lumber, which had to be delivered at a loss. Plaintiff admits that it was his duty to know what the plant could produce and to know the amount and quality of the stock on hand, and of course offers explanations in justification of his acts, but the fact remains that defendant was not getting the results which it had a right to anticipate when it employed him. Whether this was due to incompetency or inefficiency or other causes it is difficult to say, but it obviously offered serious enough ground of complaint on the part of defendant, as required under the cited provision of the Code, to justify the dismissal of its employee. In explaining the causes of his inaction plaintiff intimates that much of his time was taken up with duties which he did not consider as pertaining to his employment, and that defendant did not have sufficient stock on hand to offer to the trade.

There may be some truth in both of these statements, but the relations of intimacy and confidence which should exist between an employer, and his employee require that plaintiff should have submitted these facts to defendant at the time, and discussed them with a view of remedying the situation. This he does not appear to have done, and it was only on the trial of the case, in explanation of his apparent shortcomings, that plaintiff drew the attention of defendant to these matters.

[6] Article 2749 of the Civil Code is a penal statute. See Lloyd v. Dickson et al., 121 La. 915, 46 South. 919.

We do not believe that under the facts established in this record plaintiff has shown sufficient grounds to justify the enforcement of that statute.

For these reasons the judgment appealed from is avoided and reversed, and it is now ordered that plaintiff's demand be refused at his costs.

Rehearing refused by Division B, composed of Justices O'NIELL, LAND, and BAKER.