CLARENCE M. STOFFEL, APPELLEE, V. METCALFE CONSTRUCTION COMPANY ET AL., APPELLANTS.

17 N. W. 2d 3

FILED JANUARY 5, 1945. No. 31847.

*Joseph T. Votava,* for appellant.

*M. L. Donovan, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Douglas county by Clarence M. Stoffel, as plaintiff, against the Metcalfe Construction Company, a corporation, the Hamilton Construction Company, a corporation, and the Kansas City Bridge Company, a corporation, as defendants, to recover damages for a breach of contract. From a verdict and judgment thereon in favor of the plaintiff, the defendants have appealed.

For the purpose of this opinion Clarence M. Stoffel will be referred to as plaintiff and the several defendant companies as defendants.

Under the principle that in a law action it is error for the trial court to direct a verdict for either of the parties on an issue of fact on which the evidence is conflicting and that such issue should be submitted to the jury for their determination, the defendants contend the court erred in giving instruction No. 4. *Doyle v. Franek*, 82 Neb. 606, 118 N. W. 468; *Stevens v. Fall*, 133 Neb. 610, 276 N. W. 401; *Scott v. New England Mutual Life Ins. Co.*, 128 Neb. 867, 260 N. W. 377.

Instruction No. 4 is in part as follows:

" * * * you are instructed that in this case, notwithstanding the fact that the existence of a contract between the plaintiff and defendants has been denied by the defendants, .the uncontradicted evidence discloses that the contract as alleged in the plaintiff's petition had been entered into, and that the plaintiff was discharged by the defendants.

"Therefore you are instructed as a matter of law that the contract as alleged in the plaintiff's petition did exist between the plaintiff and the defendants, and that the plaintiff was discharged therefrom by the defendants."

The undisputed evidence discloses that Thomas J. Durkin was project engineer for the defendants on their Canadian and Alaskan projects and part of his job was to obtain personnel for the engineering department. On December 18, 1942, the plaintiff, a consulting and structural engineer, contacted Durkin at the Pathfinder Hotel in Fremont, Nebraska, and discussed with him the matter of employment. At the conclusion of the meeting plaintiff asked Durkin to hold it open for a day or two and he would make up his mind. On December 20, 1942, he called Durkin and advised him that he would accept the proposition. Durkin then, under date of December 26, 1942, wrote plaintiff a letter setting forth what they had agreed upon. This letter is in part as follows:

"Dear Sir:    RE: *Alcan Highway Rail Head Project*

"You are herewith notified to report at Edmonton, Canada, to assume the duties of Chief Structural Designer with a monthly rate of $700.00. You are to report at Edmonton about January 15, 1943. * * *

"Your contract will be for nine (9) months from the day you report to the Edmonton office. Your transportation from your home to Edmonton will be reimbursed shortly after your arrival. Upon satisfactory completion of your contract, your return transportation will be reimbursed. * * *

"Yours very truly,
"Metcalfe Construction Co.
"Hamilton Construction Co.
"Kansas City Bridge Company
"By /S/ T. J. Durkin
   "Project Engineer."

By their negotiations the parties discussed the proposed employment and the terms thereof. This offer the plaintiff accepted and the full terms thereof were then set out in the letter of December 26, 1942, which completed the contract of employment and the trial court was correct in so holding.

Under date of January 8, 1943, the defendants, through Durkin, sent plaintiff the following telegram: "Due to developments referred to in my conversation by phone with you this date it becomes necessary for me to withdraw the offer of the position as chief structural designer for this project made to you in our letter dated Dec 26 1942." Durkin also testified that whether they had a contract with plaintiff or whether they did not they would have let him go. Under our holding that the parties entered into the contract of employment, we hold that the acts of the defendants were in effect a discharge of the plaintiff from such employment. Therefore, the instruction was proper.

We have, in this respect, not overlooked the testimony of Durkin with reference to what further requirements he had advised plaintiff were necessary. However, under our holding that the letter of December 26, 1942, consummated the employment, such testimony becomes immaterial.

"A party is entitled to have his theory of his case, as disclosed by the evidence, submitted to the jury, under proper instructions, * * * ." *Mentz v. Omaha & C. B. Street Ry. Co.*, 103 Neb. 216, 170 N. W. 889.

Defendants contend that the nature of their work was a military secret and was to be held confidential and not made public, of which the plaintiff was advised; that plaintiff nevertheless caused and permitted an article about it to be published in the Omaha World Herald on January 6, 1943; that this release to the press was such a breach of the contract as justified plaintiff's discharge; and that this defense was not properly or sufficiently submitted to the jury.

There is evidence to the effect that on January 6, 1943, Mr. Cowan of the Omaha World Herald interviewed the plaintiff about his employment and then on the same day, from the information obtained, caused an article about it to be published therein.

By the latter part of instruction No. 4 and instruction No. 5 the burden of establishing this defense was properly placed on the defendants. However, the court did not define the duties and obligations which the law imposes upon an employee and the right of an employer as to when he may discharge an employee because of a violation thereof.

"Among the fundamental duties of the employee is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer, and wilful or intentional disobedience thereof, as a general rule, justifies a rescission of the contract of service and the peremptory dismissal of the employee, whether the disobedience consists in a disregard of the express provisions of the contract, general rules or instructions, or particular commands." 35 Am. Jur., sec. 44, p. 478.

"There is an implied obligation in contracts of employment that, as part of the consideration, the employee will be loyal, diligent, faithful, and obedient. His right to compensation depends upon the observance or performance of these duties. If he fails in due fidelity, he forfeits his right to his employment." *Bernstein v. Lipper Mfg. Co.*, 307 Pa. St. 36, 160 Atl. 770.

"Under the law, an employe is required to obey all reasonable orders of the employer." *Bang v. International Sisal Co.,* 212 Minn. 135, 4 N. W. 2d 113, 141 A. L. R. 657.

" * * * a promise by the servant to obey the lawful and reasonable orders of his master within the scope of his contract is implied by law; * * * ." *Lacy v. Getman,* 119 N. Y. 109, 23 N. E. 452, 6 L. R. A. 728, 16 Am. St. Rep. 806.

"The privilege of discharge has been said to exist in those cases where there has been a material breach of the employment contract, and 'wilful disobedience' is recognized as such a breach. Restatement, Agency, sec. 409." *Bang v. International Sisal Co., supra.*

" * * * the question whether, in any given instance, a breach was committed, is essentially one of fact, and therefore primarily for the jury." *Dorrance v. Hoopes,* 122 Md. 344, 90 Atl. 92.

"Disobedience of lawful and reasonable orders connected with his employment affords just grounds for the discharge of an employe." *Kenner v. Southwestern Oil Co.,* 113 La. 80, 36 So. 895.

"In any case where the sufficiency of the master's justification of a dismissal is deemed to raise an issue of fact, the proper course is to submit that issue to the jury under suitable instructions, informing them, in general language having relation to the evidence introduced, what kind of acts or omissions on the servant's part constitute a good cause of discharge." 1 Labatt, Master & Servant (2d ed.) sec. 272, p. 823.

The court should instruct what amounts to legal justification and from facts let the jury determine if they existed. *Ernst v. Grand Rapids Engraving Co.,* 173 Mich. 254, 138 N. W. 1050.

While we find no competent evidence that the nature of the work was a military secret, however, whether the matter was a military secret or not, there is evidence to the effect that instructions were given the plaintiff to hold it confidential and not to give it any general publicity. The trial court should have defined the duties and obligations of an

employee to his employer and the rights of an employer as to when he may discharge an employee because of the violation thereof, and thus submitted to the jury the question of whether or not the release to the press was such a breach as entitled the defendants to discharge the plaintiff.

Defendants complain of instruction No. 6. This instruction advised the jury that if their verdict was for the plaintiff he was entitled to recover the full contract price less the sum of $800, which plaintiff admits he received during this period, together with any amount that he might have earned in the exercise of due diligence by securing other employment. Defendants' complaint of this instruction is that it excluded from the jury's consideration the amounts plaintiff received from the Gate City Erection and Supply Company.

There is evidence in the record to the effect that from January, 1943, up until plaintiff left to go to Tennessee in August, 1943, he went to the office of the Gate City Erection and Supply Company two or three times a week and received from the company approximately $125 a month. Plaintiff was the owner of two-thirds of the company and practically its sole manager. He explains the amount received as being $25 for car expense and $100 capital withdrawal.

The instruction does, in effect, exclude this evidence from the jury's consideration. It was for them to consider and determine, under the evidence, whether this was salary or withdrawal of capital.

" * * * the general rule is well settled that under such circumstances the measure of damages is *prima facie* the amount of the wages for the full term: * * * . Such damages may, however, be reduced if after his discharge the employee obtained other work, or if he was offered other employment of the same general kind, which he refused: * * * ." Note appearing in 43 Am. Dec. 762, to the case of *Costigan v. Mohawk & H. R. Co.*, 2 Denio (N. Y.) 609, 43 Am. Dec. 758.

" ' "The measure of damages in such cases is the amount

of salary agreed upon for the entire period of service, less the amount which the servant has earned or with reasonable effort might have earned from other employment." (*Boardman Co. v. Petch,* 186 Cal. 476, 484 (199 Pac. 1047) . . . . . ; *Seymour v. Oelrichs,* 156 Cal. 782, 801 (106 Pac. 88, 97, 134 Am. St. Rep. 154).)' (*Goudal v. C. B. DeMille Pictures Corp.,* 118 Cal. App. 407, 414 (5 Pac. (2d) 432, 7 Pac. (2d) 174).)" *De La Falaise v. Gaumont-British Picture Corporation,* 39 Cal. App. 2d 461, 103 Pac. 2d 447. See, also, *Atholwood Development Co. v. Houston,* 179 Md. 441, 19 Atl. 2d 706. ·

In the case at bar the court should have instructed the jury that if they found for the plaintiff they should allow him the stipulated salary, less any amount he actually earned during the period of the contract or any amount he might have earned in the same or similar employment by the exercise of reasonable diligence in seeking other employment from the time of his discharge to the expiration of the contract. The court, under the evidence, should not have limited the amount he actually earned to $800, which was admitted, but should have so instructed that the jury could have considered whether or not the money he received from the Gate City Erection and Supply Company was earnings or withdrawal of capital.

In this connection we have examined defendants' contention that the court erred in excluding various exhibits in the form of ads in the Engineering News-Record of help wanted. In this we think the court was correct. These ads were not for work of the same or sufficiently similar employment so as to make them relevant. This court has said that it is the duty of a discharged employee who has been wrongfully discharged to make reasonable efforts to avoid loss by securing other employment. *Helwig v. Aulabaugh,* 83 Neb. 542, 120 N. W. 162; *Kring v. School District,* 105 Neb. 864, 182 N. W. 481. However, the "other employment" which the discharged employee is bound to seek is employment of the same or of a substantially similar character to that of which he has been deprived; he need not

enter upon service of a different or inferior kind. *Gregg v. McDonald,* 73 Cal. App. 748, 239 Pac. 373; *Taylor v. Pope,* (Mo. App.) 259 S. W. 527; 39 C. J., sec. 150, p. 117; 18 R. C. L., sec. 39, p. 529; *Standard Oil Co. v. Lloyd,* 26 Ala. App. 306, 159 So. 371; *De La Falaise v. Gaumont-British Picture Corporation, supra;* and Annotations 28 A. L. R. 737, 141 A. L. R. 663.

Exhibit 11 is a telegram dated January 8, 1943, sent by Frederick Ware, city editor of the Omaha World Herald, seeking to explain the article of January 6, 1943. It was admitted by the court for the limited purpose of showing it was sent and received. This the defendants were willing to admit. This telegram consists primarily of hearsay and conclusions and was not admissible. The court should not have received it in evidence.

The defendants further complain of certain remarks of the trial court made during the course of the trial. During the course of the trial while the defendants were examining their witness Durkin, plaintiff's counsel objected as follows: "Just a minute, I think we are getting a little bit into a lot of hearsay. The Court: Getting into it? You have been into it. That's all the witness has testified to, practically, is hearsay. Mr. Donovan: I don't like to stop the witness, - - The Court: It has been hearsay all along, but I didn't hear any objection. You are getting a little far afield when a colonel in Canada can talk to this fellow and the plaintiff is in Omaha a couple of thousand miles away and still put it in evidence. You are getting pretty far afield." There are other remarks of the court in the record referring to the testimony of the witness Durkin. "In the trial of a cause before a jury, improper comments of the trial judge from the bench may be prejudicially erroneous where they tend to discredit a witness and his testimony." *McCulley v. Anderson,* 119 Neb. 105, 227 N. W. 321. And as stated in *In re Estate of Strelow,* 117 Neb. 168, 220 N. W. 251: " * * * under our practice the jury are the sole judges of the credibility of the witnesses, and the weight to be given their testimony. Hence, it is our

conclusion that such remark made by the trial judge was without the province of the court, and was erroneous and prejudicial." See, also, *Langdon v. Loup River Public Power District*, 144 Neb. 325, 13 N. W. 2d 168. Judges should be careful in jury trials and refrain from commenting upon witnesses or their testimony for each party is entitled to have the jury pass upon the evidence without having its effect or importance altered, either as to credibility or value.

For the reasons herein stated the verdict and judgment of the district court are set aside and a new trial ordered.

REVERSED.