HAMLIN, Justice.
Plaintiff instituted this suit under the provisions of Article 2749 of the LSA-Civil Code,[1] alleging that he was improperly discharged from his position with the defendant company and was due, under his contract of employment, compensation in the sum of $26,002.73. He prosecutes this appeal from a judgment of the trial court dismissing his suit.
The facts of record disclose that Robert F. Gottschalk, plaintiff, was seventy years of age at the time of trial and, except for a short span, had devoted his working years to the insurance profession, engaging principally in general insurance. He was a large producer, being well liked among the agencies throughout the State.
On July 28, 1950, plaintiff a majority stockholder of Gottschalk General Agencies, Inc., after oral negotiations, granted to J. M, Ferguson, President of Houston Fire & Casualty Insurance Company of Fort Worth, Texas, individually or through a corporation which should be formed under his guidance, an option to purchase the stock of Gottschalk General Agencies, Inc. Therein, plaintiff stated that the minority stock ownership would be reduced to his ownership and control and delivered to J. M. Ferguson or his nominee. Paragraphs 5, 6 and 7 of the option agreement signed by J. M. Ferguson read:
“5. In the event the option herein granted is exercised, I am to be retained as an employee of either my corporation or an employee of the new corporation, in the event you choose to form one, at an annual salary of 1% of net premiums paid, provided, however, that I am to be guaranteed the sum of $7,500.00 per annum for a period of not less than three years, nor more than five years, provided none of the hereinafter contingencies arise, which are as follows :
“a. If I am found guilty of mismanagement, then my services shall be terminated and I am no longer to *55 receive the salary set forth. By mismanagement is meant neglect of duties.
“b. In the event of my death at any time when I enjoy the status of an employee, my salary is to be terminated and there is no further liability on your part in that regard.
“6. As above set forth, the employment of me shall be for no less than three years, nor no more than five years, unless modified by mutual agreement. However, my employment may be terminated at any time in the •event I am found guilty of mismanagement, sustain a protracted illness which prevents me from discharging my duties, or death.
“7. I further agree that in the event my services are dispensed with by either corporation indicated herein, either voluntary or involuntary, I will not for a period of five years from the date of such termination engage in any business in the State of Louisiana which is in competition to either of the corporations referred to herein.”
On August 18, 1950, the minority stockholder, acknowledged and approved the option agreement. Thereafter, during 1950, Mr. Ferguson acquired 51% of the stock •of Gottschalk General Agencies, Inc., and the business became known as Houston Fire & Casualty Insurance Company and Gottschalk General Agencies, Inc. Plaintiff acted as manager and was paid his •salary under the provisions set forth in the contract, supra. The defendant gradually absorbed control of the business, and •on June 30, 1951, the option, supra, was ■exercised in its entirety; the remaining 49% of the stock was delivered to Mr. Ferguson; Gottschalk General Agencies, Inc. was dropped from the title of the ■company, and Houston Fire & Casualty Insurance Company became sole owner. All parties concede that Mr. Ferguson .assigned his interests to Houston Fire & «Casualty Insurance Company. The allegations of plaintiff’s petition and the testi,mony of the defendant’s witnesses are to the effect that as of July 1, 1951, plaintiff was an employee of the defendant company and continued to receive his compensation under the provisions of the option agreement. Mr. Graber Kidwell, who had acted as secretary of the defendant company at its main office in Fort Worth, Texas, was transferred to the New Orleans Branch during the latter part of June, 1952, and was given the title of Associate Manager. The evidence preponderates that Mr. Kidwell was a trained insurance executive and was placed in control of the branch office. Mr. Gottschalk maintained the title of Manager, and his job was to secure new business and to negotiate with the company’s Louisiana agents — those companies which placed their risks with the defendant.
Plaintiff was discharged on March 26, 1952, the following letter being addressed to him on March 27, 1952 by Mr. Ferguson, Jr., as President of the defendant company:
“Confirming our verbal discussion on Wednesday, March 26, 1952, this is formal notification of the termination of our agreement dated July 28, 1950, as the affairs of the company have been mismanaged and you have neglected the duties assigned you.
“Your employment by this company and its affiliated companies was terminated on March 26, 1952 and Mr. Ed Coady has been made manager of the New Orleans Office with Mr. Andy Payne as his assistant. You may remove any personal items not pertain-' ing to our insurance business or that were purchased from you from the office during reasonable business hours, but we shall expect you to surrender your keys and we are expecting you to comply with Paragraph Seven of the contract.”
In response to an inquiry from Mr. Gotts-chalk, Mr. Ferguson, Jr. replied as follows on April 4, 1952:
“In reply to your letter of April 2nd the charges which I have made have *56 all been discussed with you and include such thing’s as drinking on duty, not reporting to the office, fighting in the office and numerous other matters previously discussed with you.
“I am quite sure that you are attempting to lay a predicate for a law suit and from past experience with you there is no' reason for me to think that you will not attempt it.
“We are in a position to adequately prove the charges we have made, therefore, I see no further reason to correspond regarding my letter of dismissal and termination of your contract.”
Plaintiff filed suit on April 22, 195S, stating among his numerous allegations that—
“ * * * said termination of his employment by defendant was entirely without cause or provocation on the part of plaintiff within the terms of the agreement of employment * * *; that no charges of misconduct were brought to bear against plaintiff, nor were any reasons for such summary dismissal made known to him although he diligently requested that he be confronted with them; all of which actions on the part of defendant amounted to a flagrant and wanton breach of the said agreement of employment, entitling plaintiff to recover thereunder from defendant in accordance with the terms of Article 2749 of L.S.A. Civil Code.”
In its answer defendant averred a long series of actions on the part of plaintiff, commencing shortly after Mr. Ferguson purchased a majority of the stock of Gotts-chalk General Agencies, Inc. in 1950 and culminating with plaintiff’s discharge on March 26, 1952, which rendered keeping him in its employ insupportable. Without enumerating these actions in detail, they cited disobedience of instructions, covering prohibited risks, neglect of duty, one incident of fist fighting, and habitual intoxication during working hours.
In its supplemental answer defendant averred that plaintiff accepted and cashed a check it gave him on March 26, 1952, thereby settling all claims which he might allege against the defendant.
Defendant filed exceptions of no cause and no right of action, based on the contention that the defendant was not the proper party to be sued since plaintiff’s option agreement was executed between him and Mr. Ferguson. These exceptions were argued prior to trial, and the court permitted an amendment instanter to show that the interest in the Gottschalk General Agencies, Inc. purchased from plaintiff was assigned by Mr. Ferguson to the Flouston Fire & Casualty Company, which assumed all obligations under the option agreement, supra.
In argument before this Court, plaintiff contended that many of the averred improper acts of conduct were dated before July 1, 1951, which was a period when he did not owe submission to the defendant company.
The negotiations between plaintiff and defendant conclusively show that plaintiff became an employee of the defendant on July 1, 1951. His obedience to the defendant was required from that date. A careful consideration of the testimony of record discloses that the following- actions of plaintiff, of which defendant complains, occurred after July 1, 1951:
(a) Writing prohibited risks;[2]
(b) Disobeying instructions and the policy of the company;[3]
(c) Intoxication during working hours, which made him incapable of *57 carrying on the affairs of the company to its best interest.[4]
We do not believe that it is necessary to enumerate or describe in detail the acts of insubordination committed by plaintiff between July 1, 1951 and March 26, 1952, the date of his discharge. His contract with the defendant company specifically recited that his services should be terminated if he were found guilty of mismanagement, and that mismanagement meant “neglect of duties.” A number of witnesses appearing in plaintiff’s behalf testified that they had never seen him drunk, but the weight of the evidence is to the effect that plaintiff’s drinking was excessive, rendering him incapable of properly transacting his company’s business. Despite being warned by Mr. Ferguson, Jr. on occasions very close to the date of his discharge, he continued his bad habits. Such constituted neglect of duties or mismanagement. Defendant was, therefore, justified in terminating plaintiff’s employment on March 26, 1952. Its action was within the purview of LSA-C.C. Article 2749, which recognizes that one hired for a definite period of time may be discharged before the end of such time where there is serious ground of complaint. Nolan v. Danks, 1 Rob. 332; Kenner v. Southwestern Oil Co., 113 La. 80, 36 So. 895; Wells v. Sherrill Hardwood Lumber Co., 151 La. 1081, 92 So. 706; Evans v. Delta By-Products, La.App., 52 So.2d 593.
The trial judge, in a lengthy opinion, reviewed the evidence, found that defendant was justified in terminating plaintiff’s employment, but concluded that plaintiff and defendant’s operations were “in the nature of a joint adventure, or a partnership, or a mandatary, the violation of which should be governed by the general rules dealing with the breach of contracts ‘to do’ or not ‘to do.’ ” He then held that plaintiff suffered no loss, citing 15 A.L.R. 751.
As previously stated, we are of the opinion that plaintiff was an employee of the defendant, which fact was conceded by all parties. His claim is encompassed within the provisions of Article 2749 of the LSA-Civil Code. Thus, he is entitled to recover his salary through the date of his discharge. McWilliams v. Elder, 52 La.Ann. 995, 27 So. 352; Nolan v. Danks, 1 Rob. 332.
Under his contract, supra, plaintiff was to receive an annual salary of 1% of net premiums paid the defendant, being guaranteed the sum of $7,500 per annum. He was paid under the terms of this contract, but there is no conclusive testimony showing that he received the entire amount due him through March 26, 1952. Fie did not release, nor did he intend to release the defendant company by accepting a check on the date of his discharge. The record does not contain a mathematically precise statement as to the amount of the company’s annual net premiums paid to it. Certificates from the Secretary of State showing the volume of business done by defendant, which were offered by plaintiff, are insufficient. Also insufficient is the testimony of defendant’s officers that extra checks were issued to plaintiff as a percentage of premiums collected. We are, therefore, constrained to remand this case to the trial court for a determination of the amount earned by and due plaintiff for the period from July 1, 1951 through March 26, 1952.
For the reasons assigned, the judgment appealed from is affirmed insofar as it decrees that plaintiff was discharged by defendant on March 26, 1952 for sufficient cause; the judgment is reversed insofar as it holds that plaintiff and defendant were engaged in a joint venture; the case is remanded to the trial court for a determination of the amount due plaintiff as his salary, taking into consideration 1% of the annual net premiums paid the defendant *58 company from July 1, 1951 through March 26, 1952. Appellee to pay the costs of this appeal; all other costs to await the final determination of this cause.
SIMON, J., absent.

. “If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he stall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.”

. Mr. Kidwell testified with respect to numerous instances.

. Plaintiff made excessive purchases for advertising, and he refused to park his car in a lot assigned by defendant. »

. The record is replete with incidents of plaintiff’s excessive drinking, at which times he could not properly and ably represent defendant.