145 So.2d 636 (1962)
Kenneth KRIZAN
v.
STORZ BROADCASTING COMPANY.
No. 746.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
Rehearing Denied October 29, 1962.
Certiorari Denied December 10, 1962.
*637 Polack, Rosenberg & Gex, Lucien M. Gex, Jr., New Orleans, for Storz Broadcasting Co., defendant-appellant.
Albert J. Huddleston, New Orleans, for Kenneth Krizan, plaintiff-appellee.
Before LANDRY, RUSSELL and HUMPHRIES, JJ.
LANDRY, Judge.
In this action plaintiff, Kenneth Krizan, a radio announcer or "disc jockey" seeks recovery from his employer, Storz Broadcasting Company, defendant herein, of the sum of $4,350.00 for the alleged breach of a fixed term employment contract between the litigants by virtue of said defendant's reputed termination of the contract without cause prior to its expiration date. The amount sought by plaintiff represents the unpaid salary allegedly due him from the date of his asserted improper discharge until the expiration date set in the contract. From the decree of the trial court awarding plaintiff judgment in the sum of $4,350.00 (the amount admittedly due plaintiff under the remaining term of the contract) defendant has taken this appeal. Plaintiff neither appealed nor answered defendant's appeal but in his brief before this court learned counsel for plaintiff has urged that we award plaintiff attorney's fees and penalties pursuant to the authority contained in LSA-R.S. 23:632.
It is uncontroverted that on March 10, 1960, plaintiff arrived at his place of employment fifty-five minutes late without having called in to notify his employer of his tardiness and for such oversight he was summarily discharged.
Appellant contends plaintiff was discharged for tardiness and failure to follow instructions which constituted a breach of the employment contract by plaintiff and was, therefore, good and sufficient cause for defendant's termination of the employment agreement.
In considering the factual circumstances of the present case as hereinafter revealed, it must be borne in mind that, unlike employment for an indefinite period (wherein the employee is dischargeable at will without reason or cause), the instant *638 case involves employment under a written contract for a fixed period. It is well settled in our jurisprudence that employment of the latter character carries with it the right of the employee to receive all wages or salary due under the contract excepting only those instances in which he is discharged for cause prior to the contract's termination. Dunbar v. Orleans Metal Bed Co., 145 La. 779, 82 So. 889; Steedley v. Winbarg, La.App., 44 So.2d 193; Carlson v. Ewing, 219 La. 961, 54 So.2d 414.
Succinctly stated, defendant's contention is twofold, namely, (1) tardiness is sufficient cause in itself for discharge of an employee; and (2) plaintiff in the case at bar violated express instructions which required that he notify defendant by telephone of his expected tardy arrival on the day in question.
Upon the authority of Chapman v. Division of Employment Security of Department of Labor, La.App., 104 So.2d 201, appellant contends in effect that tardiness per se constitutes ground for termination of a contract of employment. More specifically, learned counsel for appellant cites the following language appearing in the Chapman case, supra:
"* * * From time immemorial promptness in reporting to work has been regarded as essential to the proper conduct of an employer's business, and tardiness has been accepted as sufficient grounds for the termination of employer-employee relationship." (Emphasis supplied).
Our examination of the Chapman case, supra, reveals that the foregoing quotation taken therefrom is not followed by any citation of authority. Additionally, our independent research fails to disclose authority for such broad language which appears to be obiter dicta considering the decision, as we understand it, is merely authority for the proposition that repeated tardiness constitutes misconduct in connection with the employee's work within the meaning of the term "misconduct" as said term appears in the Louisiana Employment Security law.
We believe the sounder, fairer and more equitable rule to be that whether tardiness constitutes ground for termination of employment is dependent upon the facts and circumstances of each individual case. Manifestly, in resolving such a question the attending facts and circumstances of each individual case must be taken into consideration such as (but not limited to) the type of occupation, profession, calling, business or undertaking involved, the custom regarding tardiness in the particular field of endeavor and the policies of the employer regarding late arrival as such policies are made known to his employees. We shall proceed to view the facts of the instant case in the light of the pronouncements hereinabove set forth.
The evidence herein reflects that Radio Station WTIX (operated by defendant corporation) was under the supervision of a General Manager, Fred Berthelson, who was also referred to as Station Manager. The announcers, (seven or eight in number, including plaintiff), were under the direct supervision and control of a Program Director which position was held by one Marshall H. Pearce at the time of plaintiff's discharge.
Plaintiff, an announcer or "disc jockey" was engaged to perform services on a 40 hour week basis. It appears that a disc jockey's daily duties and time schedule is divided into two categories, namely, "air time" and "production time". It further appears that "air time" refers to that portion of the announcer's schedule during which he is on the air "broadcasting live" by playing records, performing commercials in person and interspicing a live program with such patter, conversation and dialogue as is peculiar to his individual style of announcing. On the other hand, "production time" is shown to be that portion of the announcer's time utilized in the preparation of "taped" commercial announcements variously referred to in the profession as promotional and gimmick spots.
*639 According to the testimony of the Station Manager, Berthelson, "air time" was performed by the several announcers on shifts allocated in accordance with a prearranged weekly schedule with which each announcer was familiar. Production work, according to Berthelson was also done by each announcer at specifically designated times which were usually fixed by the Program Director, Pearce, but sometimes established by Berthelson himself. It is readily conceded that none of the station's announcers were required to punch a time clock.
Of the several witnesses who testified herein concerning the policy of defendant-employer regarding late arrival for work all agree that the announcers employed by appellant were frequently tardy for work particularly so in reporting for production time. It further appears that at the time of trial in the court below some of these employees continued to report late for production time. In this regard Pearce testified that he personally had been late for production time and that no employee had been previously discharged for tardiness. In fairness, however, we wish to point out that the record shows that at the time of trial Pearce was no longer in defendant's employ although the reason for his leaving defendant corporation does not appear of record.
The Station Manager, Berthelson, testified that in all probability he had warned all disc jockeys not to be late for work. However, Richard Celentano, a fellow employee of plaintiff (still employed by defendant at the time of trial) testified that announcers were told to use their own judgment about reporting to work on schedule. Celentano also testified that he understood that if he was going to be late for an hour or for a considerable length of time he was supposed to call in and report that he would be late. Herbert Lathrop, (professional name, Herb Holiday), a former employee of defendant presently employed by a rival station, testified that the only thing announcers were required to be punctual about were "air shows" and that such employees were frequently late for production time. According to Lathrop (Holiday) he was never instructed to call in the event of lateness although as a matter of courtesy he usually did call and report his impending tardiness. Pearce did not feel it necessary to call unless he was going to be "more than a few minutes late".
The record establishes that with respect to production time there were instances when an announcer reporting on schedule would have no immediate services to perform. At other times, however, the press of business was such that in the event of a late arrival for production time the program manager would enlist the aid of a substitute in the event the scheduled employee did not arrive timely. From the foregoing it will readily appear that appellant's policy respecting punctuality was one of complete informality and laxness.
There is some evidence in the record, however, that the station manager and program director desired to improve the situation disclosed and that in this regard the program director, Pearce, had himself been criticized by his superior, the station manager, for arriving tardily. The record further reflects that both the station manager and program director, though desirous of improving the situation noted, were somewhat reluctant to initiate positive steps to effectuate a policy of promptness and make same known to the employees involved.
In essence Berthelson testified he instructed Pearce to advise plaintiff that plaintiff would be discharged if plaintiff did not call and report his inability to report on time. Pearce testified that upon orders from Berthelson he requested plaintiff to call him if plaintiff would be late thereafter. He stated positively that he did not inform plaintiff that plaintiff's failure to report would subject plaintiff to dismissal. Plaintiff conceded that Pearce spoke to him about calling if plaintiff were to be late. He further stated that nothing in Pearce's *640 tone or language implied that failure to call would be considered cause for dismissal.
We believe the record in the instant case fails to establish with any degree of certainty that defendant's employees were properly notified that future tardiness would not be countenanced and that the former policy of laxity in this regard was being abandoned in favor of one which would henceforth require punctuality of arrival under penalty of dismissal. In this connection we note that not only did all of the announcers (saving Pearce) testify that they were not so instructed but also that had the Station Manager Berthelson wished to adopt such a policy he had ample opportunity to do so by virtue of his contacts with the several employees. In this connection it appears that Berthelson personally delivered weekly work schedules to each announcer. If he intended to establish a new policy with respect to prompt attendance it would be reasonable to expect him to mention the change to the employees at the time he personally handed each his weekly work schedule. Moreover, at or about the time involved, personnel meetings were being held regarding a publicity stunt known as a Wak-a-thon currently being conducted by defendant, which meetings were attended by the announcers who were thereat urged to encourage a fellow employee attempting to establish a record which will hereinafter be explained in some detail.
We do not herein question or cast any doubt on the right of an employer to demand and require punctuality and promptness on the part of his employees with respect to their reporting for work. We do hold, however, that to expect punctuality after permitting and acquiescing in a policy of informality and laxity, the employer must make it clear to the employee that a change in policy has been placed in effect and that henceforth promptness will be demanded and required. The evidence convinces us, as it apparently did the learned trial court, that appellant has failed to establish that proper and adequate notice of a change in the former policy was communicated to plaintiff herein.
Appellant also contends that appellee breached the contract in question by failing to follow instructions. This contention is predicated upon a contract provision which in substance requires that the employee will promptly and faithfully comply with all reasonable requirements, directions and requests made by appellant. On this score Berthelson testified that approximately two weeks prior to plaintiff's release plaintiff arrived for work approximately one hour late which occurrence upset the Station Manager Berthelson and caused Berthelson to suggest to Pearce that the latter henceforth require all employees to report to work on time. When plaintiff arrived for work on this occasion, Pearce instructed plaintiff to henceforth call and report any tardiness. Pearce, however, did not warn plaintiff that if he were again late he would be dismissed.
Appellee readily conceded he was fifty-five minutes late in arriving for work on March 10, 1960, and failed to call and report his tardiness. He explained, however, that he remained awake until 4:00 A.M. of the morning of March 10, 1960, performing unscheduled work for his employer and as a consequence thereof overslept. He did not call the station because he was aware that his employer was cognizant of his remaining up during the early morning hours in the gratuitous performance of the business of the station. We will consider, in some detail, the circumstances surrounding the occurrence in question with the view of determining whether the single instance of failure to conform with instructions was a wilful disobedient act upon the part of plaintiff-employee, or whether under the circumstances shown, it was justified and therefore does not constitute ground for appellee's discharge.
On the date in question the station was in the process of conducting a promotional *641 gimmick denominated a Wak-a-thon in the showroom of a furniture company. In this regard appellant's employee, Holiday, commenced a program on the morning of March 3, 1960, with the view of staying on the air continuously, as long as possible, in the hope of attaining the dubious distinction of setting a new record for sustained, uninterrupted broadcasting. The Station Manager, Berthelson, summed the announcers to a meeting and instructed them to report to the furniture store in question from time to time during off hours to encourage their colleague Holiday in his endeavor and to prevent his falling asleep. Early in the morning of March 10, 1960, plaintiff was advised that Holiday's collapse was imminent. Plaintiff and his wife went immediately to the furniture store to assist in keeping Holiday awake but despite their efforts Holiday collapsed from exhaustion at 2:06 A.M. and could not be revived. Pending the arrival of a doctor who was summoned to Holiday's aid, a policeman attempted Holliday's revival. Plaintiff called the station manager and reported Holiday's collapse following which development plaintiff and a fellow employee continued the program until approximately 4:00 A.M., at which time plaintiff left to go home. Meanwhile, however, the station manager arrived at the scene and Holiday was taken to a hospital. Plaintiff and his wife arrived home at approximately 5:00 A.M. and plaintiff, being upset over Holiday's condition, was unable to sleep immediately. Eventually plaintiff fell asleep and did not awaken until approximately 2:00 P.M. that afternoon at which time he was scheduled to report for work. Upon awakening plaintiff immediately dressed and left for work arriving approximately fifty-five minutes late. For the aforesaid late arrival plaintiff, upon reporting for work, was discharged for being tardy and failing to call in and advise that he would not report on time.
In support of its contention that disobedience of a lawful and reasonable order connected with his employment constitutes just cause for an employee's discharge learned counsel for appellant cites the following authorities: Vicknair v. Southside Plantation Co., 10 Orleans App. 43; Kenner v. Southwestern Oil Co., 113 La. 80, 36 So. 895; and Wolff v. Goldsmith, 1919 Orleans No. 7626, which appear to be distinguishable from the case at bar in that they involve wilful and intentional disobedience and defiance of the employer's instructions or orders. For example, the Vicknair case, supra, involves an employee's peremptory refusal to obey an order without assigning a reason for such refusal. In the Kenner case, supra, it appears that the employee persistently refused to submit certain reports according to written instruction and also drew on an expense account despite previous instruction to the contrary.
The law applicable to the instant case appears well and concisely stated in 35 Am. Jur., Verbo Master and Servant, Page 478, § 44, as follows:
 "§ 44. Disobedience of Employer's
 Rules, Instructions, or Orders.
"Among the fundamental duties of the employee is the obligation to yield obedience to all reasonable rules, orders, and instructions of the employer, and wilful or intentional disobedience thereof, as a general rule, justifies a recission of the contract, of service and the peremptory dismissal of the employee, whether the disobedience consists in a disregard of the express provisions of the contract, general rules or instructions, or particular commands.
* * * * * *
"In order to constitute disobedience, the employee's conduct must have been wilful or intentional, wilfulness being characterized by a wrongful and perverse mental attitude rendering the employee's act inconsistent with proper subordination. An employer will doubtless be precluded from asserting violation of a rule or order as a justifiable *642 ground for the discharge of an employee when it appears that he has waived compliance with the rule or that the rule has been abrogated by habitual violations of which the employer has notice." (Emphasis supplied.)
From the evidence of record herein, it is clear that plaintiff's one and only violation of the instruction to call and report his tardiness in reporting for production time did not amount to either disobedience or insubordination. There is no dispute that plaintiff's neglect in this regard was the first instance of its sort following the order or instruction. Neither can it be said that such action resulted from plaintiff's lack of concern over his employer's affairs since plaintiff's dedication to appellant's interest was amply demonstrated and established when plaintiff voluntarily assumed the duties of air time in the early morning during his off time when confronted with the emergency occasioned by Holiday's collapse. Under such circumstances it could hardly be contended with any degree of force or logic that his conduct was characterized by a wrongful or perverse mental attitude toward his employer.
We wish to reiterate the views herein previously expressed to the effect that we do not herein intend to cast any doubt upon the right and privilege of all employers to insist upon punctual arrival of their employees. Neither do we wish the views herein expressed to be construed as either limiting or restricting the right of an employer to alter present rules in this regard or impose, establish and enforce stricter than existing regulations regarding punctuality in reporting for work. In fairness to the employee, however, such changes, alterations, revisions or restrictions in existing policy must be communicated and made known to the employees with reasonable certainty and clarity before their violation may constitute cause for dismissal.
In view of the circumstances shown, we hold that the summary dismissal of appellee for the single act of non-compliance shown did not constitute disobedience, insubordination or defiance thereby rendering his discharge arbitrary and legally unjustifiable.
Plaintiff-appellee having failed to appeal or answer the appeal taken by defendant herein, no amendment of the judgment in favor of said appellee is possible. LSA-C.C.P. Article 2133. State Through Dept. of Highways v. Chappell, La.App., 137 So.2d 432.
For the foregoing reasons the judgment of the lower court is affirmed.
Affirmed.