STATE OF NEBRASKA, APPELLEE, V. LAWRENCE R. OSBORN,
APPELLANT.
490 N.W.2d 160

Filed September 4, 1992. No. S-91-203.

Gregory C. Damman, of Hecht, Sweet, Morrow, Poppe & Otte, P.C., for appellant.

Don Stenberg, Attorney General, William L. Howland, and, on brief, Mark L. Ells for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Lawrence R. Osborn appeals his four jury convictions arising out of his sexual activity with four different children, all under the age of 10 years.

He was sentenced by the district court for Nuckolls County to consecutive prison terms of 15 years on each of two convictions of sexual penetration of two female victims and 1 year on each of two convictions of sexual contact with two male victims, for a total sentence of 32 years.

In his appeal, restated, Osborn claims the trial court erred (1) in allowing the trial to proceed when the defendant was incompetent and (2) in allowing the prosecutor to "coach" witnesses into changing their testimony. Thirdly, Osborn claims the evidence was insufficient to convict him.

We affirm Osborn's convictions and sentences.

## STANDARD OF REVIEW

An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and the verdict will be affirmed, in the absence of prejudicial error, if properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Davis*, 240 Neb. 631, 483 N.W.2d 554 (1992).

## COMPETENCE TO STAND TRIAL

In his first assignment of error, the defendant claims that the trial court erred when it allowed him to stand trial at a time when he was unable to assist with his own defense and when there was no proof of his competence to stand trial.

A defendant is competent to plead or stand trial if he has the present capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense. *State v. Bradford*, 223 Neb. 908, 395 N.W.2d 495 (1986). The question of the defendant's sanity can be raised at any time while criminal proceedings are pending. See *State v. Campbell*, 192 Neb. 629, 223 N.W.2d 662 (1974). When facts which raise doubt as to the sanity of the defendant are brought to the attention of the court, either from its own observation or by suggestion of counsel, the question should be settled before further steps are taken. *Id.* The issue of competency is one of fact to be determined by the trial court, and the means used to resolve it are discretionary with the court. *State v. Bradford, supra.*

The record reflects that when Osborn was arraigned on June 11, 1990, he was visibly and audibly crying. His attorney expressed reservations as to the defendant's ability to participate in the proceedings and to assist in his own defense. The court ordered the defendant to undergo a psychiatric examination to determine, inter alia, if he was competent to stand trial.

No psychiatric examination result was ever entered into the record, no hearing was held on the issue of competence, and no specific ruling was made regarding the defendant's competence. However, while represented by the same attorney who had

raised the issue of the defendant's competency at the first arraignment, the defendant was again arraigned on September 6, 1990, subsequently tried, and convicted without the issue of the defendant's competency or sanity being raised again. At no time was there an objection from the defense regarding Osborn's competency to stand trial. There is nothing in the record of the September 6 arraignment or the trial which would indicate that the defendant lacked the present capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and/or to make a rational defense.

The defendant in *State v. Boston*, 187 Neb. 388, 191 N.W.2d 452 (1971), presented similar circumstances. Boston's competency was questioned at his arraignment, and the court requested a medical examination. There was no record of a report being made to the court pursuant to the examination, and the defendant proceeded to trial. At no time, by objection or by any other manner, was the question of competency renewed. This court found that as there was no evidence in the record to sustain a finding that a reasonable doubt was raised as to the defendant's competency to stand trial, the trial court was not required to hold a hearing on the issue of competency and did not err in allowing the defendant to stand trial.

As we stated in *State v. Boston*, 187 Neb. at 390, 191 N.W.2d at 453, "The defendant's theory seems to be that the mere raising of the question as to incompetency, in his own subjective opinion, produces a reasonable doubt as to his competency and, therefore, the court is required to hold a hearing. This, of course, is not the law . . . ."

There is no indication in the record that during or after the second arraignment the defendant was incompetent to proceed in this criminal case. Because there is insufficient evidence shown in the record to raise the issue of the defendant's competency, the trial court did not err in allowing the defendant to stand trial. Osborn's first assignment of error is without merit.

## COACHING OF WITNESSES

In his second assignment of error, the defendant makes two separate allegations that the prosecution was allowed to coach

witnesses.

The first allegation claims that the juvenile witnesses were coached prior to the trial. G.O. and L.O., two male victims, and C.T., a female victim, all independently testified that they had been in the courtroom with attorneys prior to the trial and that at that time they had talked about their testimony and answered questions similar to those which were asked at trial. When specifically asked by the prosecutor at trial if they were told what to say while testifying, G.O. answered, "You told me to tell the truth," and C.T. answered, "No" and "I tell the truth." L.O. answered, "On some of them you — if I didn't remember, just say I didn't remember."

All this indicates is that the prosecution prepared the children for trial in part by familiarizing them with the courtroom and with the trial process, a procedure encouraged by legal scholars. See Nancy W. Perry and Larry L. Teply, *Interviewing, Counseling, and In-Court Examination of Children: Practical Approaches for Attorneys*, 18 Creighton L. Rev. 1369 (1985).

There is nothing in this record to suggest that the attorneys who prepared the children directed or suggested to the children what they were to say other than to tell the truth while they were testifying.

Osborn also argues that the trial court erred in granting a recess during C.T.'s direct examination so that the prosecutor could take C.T. aside and make her remember the "right" answer and to coach C.T. when she did not give the testimony that the prosecutor wanted. Osborn argues that the trial court erred in not dismissing the charges which were brought against the defendant based upon C.T.'s testimony.

During C.T.'s direct examination, the following colloquy occurred:

[Prosecutor:] [D]id he touch the outside or the inside of your vagina?

[C.T.:] The outside.

Q. Did he ever touch the inside of your vagina?

A. No.

Q. Do you remember — did you ever talk to Deputy Stemper about this case?

A. Yes.

Q. Was that just this last summer?

A. Yes.

Q. Do you remember what you told him?

[Defense counsel]: Object, hearsay.

THE COURT: Overruled.

[Defense counsel]: Your Honor, this witness — the witness is repeating her own words.

[Prosecutor:] Do you know what you told Deputy Stemper, do you remember?

A. No.

Q. Do you remember telling him —

[Defense counsel]: Wait a minute, Your Honor. I will object to that as leading, an attempt by the public prosecutor to testify.

After a discussion at the bench, the prosecution requested and was granted permission to break with C.T.'s testimony, call another witness, and thereafter resume the direct examination of C.T. This was done without an objection by the defendant. C.T. then testified as follows:

[Prosecutor:] [W]e just had a little recess and I talked to you in [the county attorney's] office, is that right?

[C.T.:] Yes.

Q. What did we talk about?

A. Why I didn't say such and such.

Q. Okay. . . . What happened in the bathroom when you went to visit Lawrence's house?

A. He stuck his finger in my vagina.

Q. Why didn't you say that before? . . .

A. I forgot.

C.T. testified on cross-examination that she also "forgot" when she told defendant's counsel prior to trial that the defendant had not digitally penetrated her. Later in the examination, C.T. stated that when she had spoken to the prosecutor during the recess in her testimony, he had not told her what to say, and he had told her she was to tell the truth.

The order in which proof is introduced is to a large extent within the discretion of the trial court, and its ruling in that regard is no cause for reversal where the rights of the defendant are not shown to have been prejudiced. *State v. Chaney*, 184

Neb. 734, 171 N.W.2d 787 (1969). The general conduct of the trial rests within the discretion of the trial court. *State v. Smith,* 192 Neb. 794, 224 N.W.2d 537 (1974). The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. *Geders v. United States,* 425 U.S. 80, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976). To this end, the judge may determine generally the order in which parties will adduce proof; his or her determination will be reviewed only for abuse of discretion. *Id.*

The defense herein made no objection to the continuing direct examination of C.T. following the recess and therefore waived whatever objection the defendant may have had to the evidence so adduced. See *Griffith v. Griffith,* 230 Neb. 314, 431 N.W.2d 609 (1988).

The defendant is precluded from a dismissal on the grounds that the witness may have been coached. The U.S. Supreme Court has determined that

> [t]he opposing counsel in the adversary system is not without weapons to cope with "coached" witnesses. A prosecutor may cross-examine a defendant as to the extent of any "coaching" during a recess, subject, of course, to the control of the court. Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility, if it developed that defense counsel had in fact coached the witness as to how to respond on the remaining direct examination and on cross-examination.

*Geders v. United States,* 425 U.S. at 89-90.

The Washington Court of Appeals, in a case strikingly similar to this case, found that the state was properly granted a short recess in a sexual assault prosecution to consult with the 67-year-old victim after she testified on direct examination that two sex acts took place but answered in the negative when asked about any other sex act, contrary to her pretrial statement. The court, relying upon *Geders v. United States, supra,* found that the defendant had the opportunity to attack the victim's credibility by cross-examining her as to the nature of the consultation with the state during the recess and the reasons for

the change in her testimony. See *State v. Delarosa-Flores*, 59 Wash. App. 514, 799 P.2d 736 (1990).

The defendant herein had ample opportunity to cross-examine C.T. as to the nature of the talk she had with the prosecutor during the recess. There is no evidence here that the prosecution did anything other than review with C.T. the prior statements she had made.

Finally, there is no validity to Osborn's argument that the statement C.T. made after the recess regarding the penetration should be discredited as a matter of law. We have found that when it is clear that a party as a witness, to meet the exigencies in pending litigation and without reasonable explanation, changes such witness' testimony and then testifies to facts materially different concerning a vital issue, the subsequent and altered testimony from such witness is discredited as a matter of law and should be disregarded. *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986). However, an inconsistent or contradictory statement by a witness who is not a party opponent is a factor which may affect a jury's evaluation of a witness' credibility or weight to be given such witness' testimony. *Id.* Clearly, C.T. is not a party in the litigation, and her testimony, therefore, should not be discredited as a matter of law.

Osborn's second assignment of error is without merit.

### SUFFICIENCY OF THE EVIDENCE TO CONVICT

In his third assignment of error, the defendant claims that there was insufficient evidence to support his convictions and that there was insufficient proof that the alleged assaults occurred within the timeframes set forth in the information.

The information contained seven counts. Counts 1, 3, and 7 were dismissed at the end of the State's case. The remaining counts are as follows:

### COUNT 2

On or about April 1989, in the County of Nuckolls, State of Nebraska, Lawrence R. Osborn, being a person nineteen years of age or older, did then and there subject [A.B.], a person of less than fourteen years of age, to sexual penetration. . . .

. . . .

## COUNT 4

On or about July 6, 1987 to July 10, 1987, in the County of Nuckolls, State of Nebraska, Lawrence R. Osborn, being a person nineteen years of age or older, did then and there subject [C.T.], a person of less than sixteen years of age, to sexual penetration. . . .

## COUNT 5

On or about May 15, 1987 to May 17, 1987, in the County of Nuckolls, State of Nebraska, Lawrence R. Osborn, being a person of nineteen years of age or older, did then and there subject [G.O.], a person of less than fourteen years of age, to sexual contact. . . .

## COUNT 6

On or about May 15, 1987 to May 17, 1987, in the County of Nuckolls, State of Nebraska, Lawrence R. Osborn, being a person of nineteen years of age or older, did then and there subject [L.O.], a person of less than fourteen years of age, to sexual contact. . . .

Any person who subjects another person to sexual penetration and the actor is 19 years of age or older and the victim is less than 16 years of age is guilty of sexual assault in the first degree. Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1989).

A person commits sexual assault of a child if he or she subjects another person 14 years of age or younger to sexual contact and the actor is at least 19 years of age or older. Neb. Rev. Stat. § 28-320.01(1) (Reissue 1989).

Sexual penetration is defined as "any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes." Neb. Rev. Stat. § 28-318(6) (Reissue 1989). Sexual contact is defined as

the intentional touching of the victim's sexual or intimate parts . . . . Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts . . . when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual

arousal or gratification of either party.
§ 28-318(5).

In proving sexual contact, defined in subsection (5) of § 28-318, the State need not prove sexual arousal or gratification, but only circumstances and conduct which could be construed as being for such a purpose. *State v. Berkman*, 230 Neb. 163, 430 N.W.2d 310 (1988). See *State v. Gonzales*, 219 Neb. 846, 366 N.W.2d 775 (1985).

The record reveals the following: Osborn, born January 11, 1954, was separated from his then wife on October 11, 1985. He had three children from that marriage, including the two male victims in this case, G.O. and L.O. After the divorce became final, the defendant remarried on February 13, 1988. This wife brought three children into the marriage, including victim A.B. The fourth victim, C.T., is a female cousin of A.B.

G.O. and L.O. visited the defendant every other weekend following the defendant's divorce from their mother. G.O., age 12 at the time of trial, testified that the defendant "took us [including G.O. and L.O.] into his bedroom and has us take off our clothes. . . . He took off his [clothes]. . . . He made us play with [his penis]."

There was some uncertainty in G.O.'s testimony as to when and how often this type of conduct occurred. He stated that it happened "A lot. . . . Every weekend we saw him," while also saying that "things happen[ed] . . . that made [him] uncomfortable" the "second" time they visited "Larry" but not the "first" time they visited Larry. He also stated that it happened "[t]he whole time we seen him the second time."

G.O. was asked if anything occurred during the last visit he had with the defendant, to which G.O. answered, "Larry had us play with him until he was satisfied," and "then he made the girls come in and [his then wife] — and he had [her] take off her clothes and [Larry and his then wife] hopped into bed and [Larry and she] had sex" while the children, including G.O., L.O., and A.B., were still in the room. G.O. could not be specific as to the dates when these events occurred. A female child testified that Osborn required her, in the presence of one or more of the victims, to take pictures of the defendant and his wife having sexual relations.

L.O., age 11 at the time of trial, testified that the last visit he had with the defendant was the weekend before Memorial Day, although he was not certain of which year. He also related that on that last visit the defendant called L.O. and his brother G.O. into the defendant's bedroom where "[Larry and his wife] were laying on the bed with no clothes on" and "[Larry and his wife] had sex." On that same visit, the defendant touched L.O.'s penis and made L.O. touch the defendant's penis.

The mother of G.O. and L.O. testified that the last visit her children had with the defendant was "the weekend before Memorial Day of '87"; "I think it was around the 16th, the weekend of the 16th or 17th." The complaint in this case was filed March 21, 1990, well within the 5-year statute of limitations. See Neb. Rev. Stat. § 29-110(2) (Reissue 1989).

C.T., age 12 at the time of trial, testified that she visited the Osborn house only once, during the week after the Fourth of July 1987. While she was there, the defendant was in the bathroom with her, she had no clothes on, and the defendant "stuck his finger in [her] vagina."

A.B., age 10 at the time of trial, testified that while she was on the couch the defendant would promise her money and candy, and then he would touch her "breasts and [her] vagina," and he would "stick his finger in [her] vagina." There was uncertainty in A.B.'s testimony as to when and how often this occurred. She testified that it would happen "[m]aybe once a week," "[m]aybe" for a year. She stated that the last time it happened she was 9 years old, but she also testified that she could not remember if he touched her before or after she "turned nine" years old on May 14, 1989.

On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case if the verdict is supported by relevant evidence, *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992), and the State is entitled to have all its relevant evidence accepted as true, the benefit of every inference reasonably drawn from the evidence, and every controverted fact resolved in its favor, *State v. McCaslin*, 240 Neb. 482, 482 N.W.2d 558 (1992). Only where the evidence lacks sufficient probative force as a matter of law may a guilty verdict be set aside as unsupported by evidence beyond a

reasonable doubt. *State v. Sexton*, 240 Neb. 466, 482 N.W.2d 567 (1992).

The evidence was sufficient to find the defendant guilty beyond a reasonable doubt on each of the counts of which he was convicted. There was evidence, as statutorily defined, of sexual penetration of A.B. and C.T. and sexual contact with G.O. and L.O. There was evidence that each act occurred in circumstances which can be construed as for the sexual arousal or gratification of either the defendant or of the victims.

The defendant erroneously claims that the evidence failed to prove that the acts charged occurred within the timeframes set forth in the information. Both G.O. and L.O. testified that the sexual contacts occurred on the last visit they had with the defendant. Their mother testified that the last visit her children had with the defendant was on the weekend before Memorial Day 1987, the weekend of the 16th or 17th. This evidence is sufficient for a jury to find beyond a reasonable doubt that the acts alleged in counts 5 and 6 occurred on or about May 15 to May 17, 1987, as charged.

C.T. testified that the sexual penetration occurred the only time she visited the Osborn house, the week after the Fourth of July 1987. This evidence is sufficient for a jury to find beyond a reasonable doubt that the act alleged in count 4 occurred between July 6 and July 10, 1987, as charged.

A.B. testified that the acts complained of happened numerous times, approximately once a week for approximately a year, although she could not specifically remember if the last time an offense occurred was before or after she turned 9 years old on May 14, 1989. This evidence is sufficient for the jury to have concluded beyond a reasonable doubt that this ongoing offense occurred at least once during the month of April 1989, the month before A.B.'s ninth birthday, as alleged in the information.

Osborn's third assignment of error is without merit.

The jury's verdicts are affirmed.

AFFIRMED.