STATE OF NEBRASKA, APPELLEE, V. LOUIE RODRIGUEZ, APPELLANT.
509 N.W.2d 1

Filed December 10, 1993.    No. S-91-958.

Lawrence G. Whelan for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and MORAN, D.J., Retired.

WHITE, J.

The defendant, Louie Rodriguez, was convicted by a jury on the charge of delivery of a controlled substance. Rodriguez appealed to the Nebraska Court of Appeals, which affirmed the conviction. We reverse, and remand for a new trial.

In August 1990, the Western Nebraska Intelligence Narcotics Group, a multiagency drug task force often referred to as "WING," arranged for a series of controlled purchases of controlled substances in Scottsbluff, Nebraska. To make the purchases, WING used a cooperating individual, Jesse Bravo.

On August 29, 1990, WING directed Bravo to attempt to purchase cocaine from August Valdez. Bravo was equipped with a body transmitter and was given "buy money." Followed by a surveillance unit, Bravo drove to Valdez' home. Bravo met with Valdez, but Valdez apparently did not have any cocaine at his home. Bravo, Valdez, and a third individual, Pablo Gutierrez, then drove to look for Valdez' brother, Joe, to see whether he had any cocaine. Eventually, still looking for cocaine, the men arrived at the Gambler Lounge.

Valdez testified that Rodriguez' gray van was parked in the parking lot of the lounge. Valdez testified that he left Bravo's car, walked halfway to the gray van, and then returned to Bravo's car to get the money from Bravo. Valdez testified that he approached the van and purchased two one-quarter gram packets of cocaine from Rodriguez. Valdez testified that he

returned to Bravo's car with the cocaine and the change.

Although the WING unit was able to continue surveillance during the purchase, no one except Valdez heard or saw Rodriguez. The WING unit lost audio contact with Valdez as soon as he left the car, because only Bravo had been wired with a body transmitter and Bravo remained in the car. Bravo testified that he was not able to see who was in the van. Michael Zitterkopf, a State Patrol investigator assigned to the WING unit, testified that he could see a person leave Bravo's car and approach the van, but that he could not see the driver's side of the van. Mark Overman, a Scottsbluff police detective assigned to the WING unit, testified that he could not see Valdez or the van and that he did not see Rodriguez.

Valdez was later arrested for delivery of a controlled substance. Valdez apparently implicated Rodriguez, who was then charged with delivery of a controlled substance. Rodriguez pled not guilty, and the case proceeded to trial.

At trial, the following exchange took place during the cross-examination of Valdez:

> [Defense counsel]: Your Honor, I'm going to object at this time. I'm — Detective Overman [seated at prosecution table] is nodding his head yes and no and helping the defendant [sic] with his answers.
>
> THE COURT: No, he wasn't. I was watching him.
>
> [Defense counsel]: So was I, Your Honor.
>
> THE COURT: Be seated, please. Go ahead.

Outside the presence of the jury, defense counsel moved for a mistrial on the ground that the prosecution had been coaching the witness. Still outside the presence of the jury, defense counsel questioned nine witnesses, each of whom testified that Overman had been coaching Valdez on the stand.

The district court found that whether Valdez had been coached was an issue of credibility and was not grounds for a mistrial. The district court allowed the defense to make a factual issue of the matter, permitting five defense witnesses to testify before the jury that they had seen Overman coaching Valdez. Overman and Valdez testified, also before the jury, that no coaching had occurred. The jury found Rodriguez guilty of delivering a controlled substance.

Rodriguez filed a motion for new trial, alleging in part that the court erred in not granting a mistrial. The district court held a hearing on the motion, at which defense counsel argued that a mistrial should have been granted because of the coaching itself and because of the judge's comments. The district court overruled the motion for new trial.

Rodriguez appealed. The Court of Appeals found that although the judge's statement was ill-advised, the judge removed any prejudicial effect that his statement might have had by allowing Rodriguez to make a factual issue out of the matter. *State v. Rodriguez*, 2 NCA 837 (1993). The Court of Appeals affirmed the conviction.

Rodriguez sought and was granted further review by this court. Rodriguez' assignments of error assert that the Court of Appeals (1) inaccurately stated the law regarding prejudicial statements made by a trial judge in the presence of the jury and (2) inaccurately stated the law regarding the coaching of witnesses. An appellate court has an obligation to reach an independent conclusion as to matters of law, regardless of the determination made by the lower court. *Wilson v. Misko, ante* p. 526, 508 N.W.2d 238 (1993); *Van DeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993).

Rodriguez first asserts that coaching a witness is grounds for a mistrial. We disagree. Rodriguez offers no support for his assertion. To the contrary, a number of state courts have held that coaching is a matter which bears upon a witness' credibility; the question of coaching is one for the jury. See, e.g., *State v. Edwards*, 420 So. 2d 663 (La. 1982); *State v. McCormick*, 298 N.C. 788, 259 S.E.2d 880 (1979); *State v. Schoolcraft*, 183 W. Va. 579, 396 S.E.2d 760 (1990).

In accord with these cases is our recent decision in *State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992). In *Osborn*, the defendant claimed that C.T., a nonparty witness, had been coached by the prosecution during a recess. The defendant had failed to object to the direct examination of C.T. which occurred after the recess. The defendant had also cross-examined C.T. regarding the conversation with the prosecutor. Noting that cross-examination is usually an adequate weapon with which to combat the possibility of

coaching, see *Geders v. United States*, 425 U.S. 80, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976), we held that the defendant was "precluded from a dismissal on the grounds that the witness may have been coached." *Osborn*, 241 Neb. at 430, 490 N.W.2d at 165.

We adhere to the reasoning of *Osborn*. Coaching of a witness is not, per se, grounds for a mistrial. See *Evers v. State*, 84 Neb. 708, 121 N.W. 1005 (1909). When the trial court's attention is drawn to the fact that a witness is being coached by a spectator at the trial, the trial court has a duty to take curative action. See *id*. (admonition to the coach may be sufficient). Ordinarily, permitting the issue to be raised on cross-examination will constitute an effective cure. *Geders, supra*; *Osborn, supra*. But see *Wamsley v. State*, 171 Neb. 197, 205, 106 N.W.2d 22, 27 (1960) (when witness' father said, " 'That's enough,' " and escorted witness from the stand during cross-examination, court had obligation to reprimand the offender, to take steps to prevent recurrence, and to admonish the jury to disregard the matter).

In the present case, the trial court not only allowed cross-examination on the subject of coaching, the trial court also allowed additional witnesses to testify to the coaching. In this respect, we find no error in the trial court's actions.

Rodriguez next asserts that the judge's statements constituted prejudicial error. We agree.

As a preliminary matter, we acknowledge that Rodriguez did not object to the judge's statement and did not, at trial, cite the judge's statement as a possible ground for mistrial. However, we find that these deficiencies are not fatal to Rodriguez' claim of prejudicial error.

Generally, " '[a] claim of improper conduct on the part of the trial judge in the presence of the jury will not be reviewed on appeal in the absence of a timely objection.' " *State v. Navrkal*, 242 Neb. 861, 868, 496 N.W.2d 532, 537 (1993), quoting *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984). One cannot gamble that improper judicial conduct will inure to his benefit and then complain that he guessed wrong. *State v. Jenson*, 232 Neb. 403, 440 N.W.2d 686 (1989); *Pitt, supra*.

The timely objection requirement is inapplicable to the

present case because the trial judge in the present case assumed the role of a witness. Neb. Evid. R. 605, Neb. Rev. Stat. § 27-605 (Reissue 1989), specifically provides: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." In discussing Fed. R. of Evid. 605, which is identical to the Nebraska rule, one commentator has explained that the rule does not apply only to formal testimony:

> [*A*] *judge, although he is neither called to testify nor voluntarily takes the stand, may nevertheless assume the role of a witness*. Such behavior . . . should be treated analogously to direct violation of [rule 605]. That is, the appellate court must examine the particular circumstances of the case to determine whether the judge's behavior was so prejudicial to the substantial rights of the parties as to merit a reversal.

(Emphasis supplied.) 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 605[04] at 605-15 to 605-16 (1993).

In the present case, the trial judge's conduct amounts to testimony from the bench. The credibility of witnesses was, as always, an issue for the jury to decide. In addition, once Rodriguez had raised the specter of coaching, the existence of coaching was an issue for the jury to decide. Speaking directly to these issues, the trial judge stated that he had been watching Overman and that Overman had not coached Valdez. In relaying this information, the trial judge assumed the role of a witness.

Having found error, we are now obligated to determine whether this error was prejudicial. We find that the trial judge's comment prejudiced Rodriguez' case because the comment bolstered the credibility of the key prosecution witness, Valdez.

To establish reversible error, a defendant must demonstrate that the trial court's action prejudiced or otherwise adversely affected a substantial right of the defendant. *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992); *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). We have repeatedly stated that a trial judge should carefully refrain from expressing any opinion of or commenting on the evidence.

*Drinkwalter, supra; State v. Bideaux*, 219 Neb. 718, 365 N.W.2d 830 (1985); *Pitt, supra; State v. Goff*, 174 Neb. 548, 118 N.W.2d 625 (1962), *overruled on other grounds, State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985); *Moore v. State*, 147 Neb. 390, 23 N.W.2d 552 (1946); *Stoffel v. Metcalfe Construction Co.*, 145 Neb. 450, 17 N.W.2d 3 (1945); *Hansen v. State*, 141 Neb. 278, 3 N.W.2d 441 (1942). Improper comments by the trial judge may be prejudicially erroneous when they tend to discredit a witness and his testimony. *Stoffel, supra.* Likewise, such comments may be prejudicially erroneous when they tend to enhance a witness' credibility. See *State v. Smith*, 200 Conn. 544, 512 A.2d 884 (1986). When the trial judge affects the credibility of a witness, either negatively or positively, the judge invades the province of the jury. See *Stoffel, supra.*

At trial, a crucial issue was Valdez' credibility. Valdez was the only witness who could connect Rodriguez to the crime. No other witness saw who sold the cocaine to Valdez. Thus, the prosecution could succeed only if the jury believed the testimony of Valdez. Cross-examination of Valdez was essential to the defense's efforts to discredit Valdez. During the cross-examination of Valdez, the defense claimed that Overman, seated at the prosecution table, was coaching Valdez. The trial judge flatly stated that no coaching occurred.

By commenting on Valdez' credibility in this manner, the trial judge blunted the defense's weapon of cross-examination. Although the court allowed the defense to make a factual issue out of the coaching and allowed numerous witnesses to testify to the coaching, the court had already communicated its evaluation of the situation to the jury. We have previously reflected upon the strong bond between the judge and the jury: " 'It is well known to those who are familiar with jury trials that jurors are usually alert to discover the attitude of the court respecting the merits of the case, and particularly in criminal actions. . . .' " *Moore*, 147 Neb. at 399, 23 N.W.2d at 557. Accord *Hansen, supra*. Other courts have reasoned similarly:

> Ordinarily, the umpire is to call the balls and strikes and not play first base. [Citations omitted.]
>
> . . . .

> A judge, sitting on the Bench, in a black robe, traditionally enjoys a warm and uncritical trust of the jurors. Intervention, coupled with the jurors' trust, can upset the equilibrium of normal advocacy relationships in the courtroom.

*State v. Sonen*, 492 N.W.2d 303, 309-10 (S.D. 1992) (Henderson, J., specially concurring). By stating that no coaching occurred, the trial judge necessarily bolstered Valdez' credibility in the eyes of the jury and prejudiced Rodriguez' case.

The State contends that the judge's comments were not prejudicial. Relying on *Bideaux, supra*, the State argues that the comments were tantamount to saying "overruled." In *Bideaux*, defense counsel objected to a statement in the prosecution's closing argument as not being reflected by the evidence. The trial judge responded, " 'I think the evidence does reflect it, counsel.' " *Bideaux*, 219 Neb. at 723, 365 N.W.2d at 834. On appeal, we stated that the trial judge's comment was tantamount to saying "overruled" and held that the comment did not constitute prejudicial error.

The present case exceeds the benchmark set by *Bideaux*. A well-established legal principle holds that it is improper for counsel to comment, at closing argument, on matters unsupported by the evidence. 23A C.J.S. *Criminal Law* § 1262 (1989). See *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989) (prosecutor's argument should be based on evidence introduced at trial). The trial judge in *Bideaux* merely stated, in a shorthand manner, that the prosecution had not run afoul of this legal principle. In contrast, the trial judge in the present case was not making a shorthand reference to an accepted legal principle. The trial judge in the present case not only *commented* on the evidence, but also *provided* the evidence by stating that no coaching occurred.

Based on the centrality of Valdez' testimony and the nature of the trial judge's comments, we conclude that Rodriguez' right to a fair trial was prejudiced. We reverse the conviction and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.