624 N.W.2d 328 (2001)
10 Neb.App. 35
Dale KRUSEMARK, Appellant,
v.
THURSTON COUNTY BOARD OF EQUALIZATION, Appellee.
Nos. A-00-401, A-00-402.
Court of Appeals of Nebraska.
March 27, 2001.
*330 Ronald E. Temple, of Gatz, Fitzgerald & Vetter, Norfolk, for appellant.
Albert E. Maul, Thurston County Attorney, Pender, for appellee.
HANNON, SIEVERS, and MOORE, Judges.
*331 MOORE, Judge.

INTRODUCTION
These cases involve appeals from decisions of the Nebraska Tax Equalization and Review Commission (TERC) affirming determinations by the Thurston County Board of Equalization (Board) regarding the valuation of residential real property owned by Dale Krusemark for the tax years 1998 and 1999. Krusemark appeals on various grounds, including that one of his witnesses was intimidated into not testifying. For the following reasons, we reverse, and remand for further proceedings.

BACKGROUND
These appeals from TERC involve the valuation of a residential real property in Thurston County, Nebraska, owned by Krusemark.
In 1997, Krusemark bought a lot for $20,000 in Pender, Thurston County, Nebraska, in an older part of town. He demolished an old house on the lot and began building a new house, which was completed in 1999. The value of the improvements are at issue in this case. Krusemark protested to the Board the valuations assigned to the property for the tax years 1998 and 1999.
The procedural background of the case for tax year 1998, case No. A-00-402, is as follows: The Board assigned to the improvements of the subject property a value of $345,845. Krusemark requested a valuation of $172,327 for the reason that the house was only approximately 75 percent complete as of the assessment date. He also requested removal of the "sales multiplier of 1.35%." At the protest hearing, Krusemark presented evidence of other, in his opinion, comparable properties and alleged that his basement was "unfinished" and thus should be assigned a lower valuation in the total calculation of the value of the subject property. Krusemark was successful in persuading the Board to reduce the assigned value of his house to $256,180 and in removing the sales multiplier.
Nevertheless, Krusemark appealed the 1998 valuation of his property to TERC. In addition to numerous exhibits introduced as evidence by both the Board and Krusemark, testimony was received from Krusemark; Leon Blomendahl, who was a real estate appraiser; and the Thurston County assessor. Krusemark argued before TERC that the valuation was excessive and incorrect because his house was only 75 percent complete on the assessment date, that the area of the basement classified as "finished" was incorrect, and that the determination that the "quality" of the house construction was "very good" was incorrect and not in accordance with standard appraisal techniques. In TERC's findings and order of March 14, 2000, deciding the case, it stated that the testimony of Blomendahl "was withdrawn and therefore [TERC] gave no weight to it," found that Krusemark had not adduced clear and convincing evidence to establish that the valuation of the Board was unreasonable or arbitrary, and affirmed the decision of the Board valuing the house at $256,180 for the tax year 1998. TERC refused to address the issue of equalization because it determined that the issue was not raised before the Board and that therefore, it was not properly before TERC.
TERC had previously entered an order denying Krusemark's motion to consolidate the 1998 and 1999 tax year appeals to be heard before it. TERC instead heard the 1999 tax year appeal, our case No. A-00-401, immediately after the 1998 tax year appeal. The procedural background for the case for tax year 1999 is as follows: TERC, by stipulation of the parties, took judicial notice of all the exhibits, evidence, and testimony presented in the 1998 tax year case it had just completed and received numerous other exhibits submitted by the Board and Krusemark for the 1999 tax year case. No testimony was offered, other than the judicially noticed 1998 proceedings, *332 in the 1999 tax year case. The Board had assigned to the improvements of the subject property a value of $326,560. Krusemark's home was completely built and finished for valuation purposes for the tax year 1999. Krusemark requested a valuation of $176,582 for the improvements for the reasons that the valuation as assigned by the Board was excessive when compared to other similar properties and was not in accordance with standard appraisal techniques. At the protest hearing, Krusemark presented evidence of other, in his opinion, comparable properties and alleged that the area of the basement classified as "finished" was incorrect. The Board denied Krusemark's protest and refused to reduce the assigned value of his house.
Krusemark appealed the 1999 valuation of his property to TERC. Krusemark argued before TERC that the valuation was excessive and incorrect because the area of the basement classified as "finished" was incorrect; that the determination that the "quality" of the house construction was "very good" was incorrect; that when compared to other, in Krusemark's opinion comparable, properties, the valuation was incorrect and not in accordance with standard appraisal techniques; and that the property was not equalized with other properties. In its findings and order of March 14, 2000, deciding the case, TERC stated that the testimony of Blomendahl "was withdrawn and therefore [TERC] gave no weight to it," found that Krusemark had not adduced clear and convincing evidence to establish that the valuation as assigned by the Board was unreasonable or arbitrary, and affirmed the decision of the Board valuing the home at $326,560 for the tax year 1999. Unlike the 1998 finding and order, TERC addressed the issue of equalization, but found against Krusemark and for the Board.

ASSIGNMENTS OF ERROR
Krusemark alleges that TERC erred by (1) intimidating Blomendahl into not testifying, (2) concluding that the county assessor's decision in allowing only an 11-percent economic depreciation for his property was not arbitrary and capricious, (3) concluding that the county assessor's opinion regarding quality of construction of his property was not arbitrary and capricious, and (4) concluding that his property was equalized with other properties in Thurston County. He also alleges that TERC erred in the 1998 tax year appeal by concluding it did not have jurisdiction over the issue of equalization.

STANDARD OF REVIEW
Neb.Rev.Stat. § 77-5019(5) (Cum. Supp.2000) provides that appellate review of a TERC decision shall be conducted for error on the record. When reviewing an order for errors appearing on the record, the appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Constructors, Inc. v. Cass Cty. Bd. of Equal., 258 Neb. 866, 606 N.W.2d 786 (2000).

ANALYSIS

Intimidation of Witness.
Krusemark alleges that the actions of TERC intimidated his expert witness, Blomendahl, into not testifying. Neb.Rev. Stat. § 77-5015 (Cum.Supp.2000) provides, in pertinent part, that "[o]pportunity shall be afforded all parties to present evidence and argument" at the hearing before TERC. Krusemark argues that this is a matter of due process.
The record reflects that while Blomendahl did testify at some length without interruption or objection, the record also reflects that the hearing officer made several comments directed toward Blomendahl. When Blomendahl attempted to give his opinion on an issue related to Krusemark's property, the hearing officer interrupted, and part of the colloquy among those present was the following:

*333 [Hearing officer]: So I take it, in answer to [the commissioner's] question, we don't have a written document from this witness, is that correct ... ?
[Krusemark's counsel]: That's correct.
[Hearing officer]: So, Mr. Blomendahl, I want to be very careful. The Commission held a hearing about six weeks ago, and a licensed Nebraska appraiser offered testimony, and the county who was involved in that hearing has now, for lack of a better term, filed charges against the witness with the Real Estate Appraisal Board. We don't want to have anything to do with it, and we don't have anything to do with it, but I just want to be real careful that you understand that in this hearing, if your testimony is being offered as that of an expert, and it's underand you're a licensed Nebraska real estate appraiser, that we are real clear about what standard that you're offering your opinion under, just for your protection. So I understandif I understand you correctly, your opinion is being offered under Standards Rule 5-4 .... Is thatI want to make sure that that's your understanding and our understanding.
[Blomendahl]: Right, right.
Later in Blomendahl's testimony, counsel for the Board objected, apparently on foundation, which the hearing officer overruled, but stated, in part:
A review appraisal is conducted under a completely different standard. That's standard three. It sounds like what you're engaging in is a review appraisal rather than a consulting report. Do you want to address that issue? Because that's part of what [Board's counsel] is referring to, and I've got to tell you, Mr. Blomendahl, I don't like witnesses who are experts testifying in front of us getting hauled in front of the Real Estate Appraisal [B]oard. It's not fair to them. And I just want to make sure that we've got a good record here.
Later in Blomendahl's testimony, again after counsel for the Board made an objection based on foundation, the hearing officer stated, in pertinent part:
First and most importantly, a review appraisal must be made in writing. So that's the issue that we've got in front of us, and I've got to tell you, I'm not real sure how to proceed. I know that if we let this witness keep going and [Board's counsel] has a problem, this witness is going to end up in front of the Real Estate Appraisal Board. I don't want to see that happen. Now, if you want to recess to talk to Mr. Blomendahl, fine. If
[Krusemark's counsel]: Perhaps we should just recess this. We're not going to get concluded today anyway.
[Hearing officer]: We're not recessing for the day. We're going to keep going. I just want to know if you want your witness to keep testifying. If you do, I'm going to overrule the objection, he'll be allowed to testify, and the commissioners can give whatever weight they deem appropriate to it.
[Krusemark's counsel]: At this time I'd ask for a recess, and I would ask that he be excused, and I'll put on other testimony.
After a brief recess, counsel for Krusemark made the following statement:
And at this time then I'm going to ask leave for the Commission to remove Mr. Blomendahl from the stand at this time until I have an opportunity over the lunch hour or something to ensure that Mr. Blomendahl is not going to be in violation of any rules.
Blomendahl was not recalled by Krusemark during the proceedings. However, counsel for the Board was allowed to cross-examine Blomendahl on the testimony he had given to this point in the proceedings. The Board argues that Blomendahl was not prevented from testifying, but that Krusemark voluntarily withdrew the testimony of his expert opinion. Our review of the record reveals no indication *334 that Krusemark "withdrew" Blomendahl's testimony.
Although Krusemark did not object to the comments made by the hearing officer and apparently chose not to continue with Blomendahl's testimony, we believe, under the circumstances, the issue of procedural due process is still properly before us. In Nebraska Pub. Emp. v. Otoe Cty., 257 Neb. 50, 595 N.W.2d 237 (1999), a labor union appealed to the Nebraska Supreme Court from a decision of the Nebraska Commission of Industrial Relations. The union asserted on appeal that the county failed to provide constitutional due process to discharged employees by not providing a pretermination hearing and opportunity to be heard. This issue had not been presented to the commission. The Nebraska Supreme Court quoted Ashby v. Civil Serv. Comm., 241 Neb. 988, 492 N.W.2d 849 (1992), for the proposition that "`procedural due process defenses should not be waived if timely raised in the first judicial tribunal to review the administrative action.'" Nebraska Pub. Emp. v. Otoe Cty., 257 Neb. at 59, 595 N.W.2d at 248. Furthermore, the Supreme Court in Nebraska Pub. Emp. v. Otoe Cty., supra, stated that it recognized that it had considered constitutional issues that were not raised until the appeal reached a court, with the Supreme Court being the first forum, and that it is the practice of the Supreme Court to consider constitutional questions in reviewing the orders of administrative agencies when those questions are raised in the Supreme Court on direct review. Thus, we find that the due process claim is properly before us on appeal in the instant case.
Turning to the issue of whether Krusemark was entitled to due process before TERC, we find Crown Products Co. v. City of Ralston, 253 Neb. 1, 567 N.W.2d 294 (1997), to be helpful to our analysis. Crown Products Company (Crown) filed a claim for damages with the city of Ralston based on Ralston's alleged breach of its agreement to purchase Crown's property. A hearing on the claim was heard before the Ralston City Council. Several council members who were also members of the council at the time of the negotiations to purchase the Crown property participated in the hearing. Three of these council members placed affidavits in the record of the hearing, over Crown's objection. None of the council members would submit to sworn cross-examination. After the hearing, the council denied Crown's claim. Crown filed a petition in error in the district court alleging, inter alia, that Crown was denied due process at the hearing before the city council. The district court found that Crown's due process rights were violated by its not receiving an impartial hearing by an impartial board, vacated the decision of the city council, and remanded the claim for a new hearing. Ralston appealed to the Nebraska Supreme Court. Citing to Geringer v. City of Omaha, 237 Neb. 928, 468 N.W.2d 372 (1991), the Supreme Court stated that a party appearing before an agency or tribunal in an adjudication hearing is entitled to due process and that due process requires, among other things, an opportunity to present evidence and a hearing before an impartial board. The Nebraska Supreme Court in Crown Products Co. stated: "We conclude that the existence of this `one shot' chance of preparing an adequate record in an adjudication hearing before a tribunal requires procedural protections similar to those given to litigants in a judicial proceeding." 253 Neb. at 7, 567 N.W.2d at 298.
We conclude that Krusemark was entitled to procedural due process in the presentation of his evidence to TERC. We must next determine whether Krusemark's right to due process was violated. In order to make this determination, we must analyze the effect of the hearing officer's comments made during the course of the proceeding. We find case law regarding judicial comments during trial helpful in this analysis. For example, in State v. Rodriguez, 244 Neb. 707, 509 *335 N.W.2d 1 (1993), defense counsel objected during the cross-examination of a witness because he felt that a police officer had been coaching the witness by nodding his head as the witness testified. In response to the objection, the trial judge stated, in the presence of the jury: "`No, he wasn't. I was watching him.'" Id. at 709, 509 N.W.2d at 3. Defense counsel moved for a mistrial. The district court determined that this was a credibility issue and let the matter go to the jury, which convicted the defendant. On appeal, the Nebraska Supreme Court held that coaching of a witness is not a ground for a mistrial, but, rather, a question of credibility for the jury. However, the Supreme Court found the judge's comments to be prejudicial error. The court initially determined that although the defendant did not object to the judge's comments, the timely objection requirement was inapplicable because the trial judge had assumed the role of a witness. Neb.Evid.R. 605, Neb.Rev.Stat. § 27-605 (Reissue 1995), specifically provides: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." The Supreme Court went on to state:
"[A] judge, although he is neither called to testify nor voluntarily takes the stand, may nevertheless assume the role of a witness. Such behavior . . . should be treated analogously to direct violation of [rule 605]. That is, the appellate court must examine the particular circumstances of the case to determine whether the judge's behavior was so prejudicial to the substantial rights of the parties as to merit a reversal."
(Emphasis in original.) State v. Rodriguez, 244 Neb. at 712, 509 N.W.2d at 4, quoting 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 605[04] (1993).
We recognize that the instant case involved an informal hearing, as provided for by Neb.Rev.Stat. § 77-5016 (Cum. Supp.2000): "All cases appealed to the commission shall be granted an informal hearing unless a formal hearing is granted as determined by the commission according to its rules and regulations." In the instant case, the order and notice of hearing directed that the hearing be held informally. In such a hearing, the formal rules of evidence do not apply. See 442 Neb.Admin.Code, ch. 2, § 001.22 (1999). However, from the context of the record, it is clear that the hearing officer was acting in a judicial capacity. He swore in the witnesses, controlled the presentation of evidence, ruled on objections, and with the two other hearing officers, assisted in the decisionmaking process.
In Central Platte NRD v. State of Wyoming, 245 Neb. 439, 513 N.W.2d 847 (1994), an administrative hearing was conducted according to the Nebraska Evidence Rules. Dr. Ann Bleed was the Nebraska state hydrologist, and Wyoming attempted to subpoena her or disqualify her from participating in the hearing. This attempt failed, and Dr. Bleed was allowed to assist in the decisionmaking process on the granting of instream flow appropriations on the Platte River. On appeal, Wyoming asserted that its due process right to a fair hearing was denied. The Supreme Court noted that Dr. Bleed was not, technically, a judge; that technically, the hearing officer was not a judge; and that the director of the Department of Water Resources was not a judge. However, the court determined that the same concerns which are raised by the prospect of judicial testimony are raised by the prospect of testimony by administrative adjudicators. In Central Platte NRD v. State of Wyoming, supra, the hearing officer, the director, and Dr. Bleed were all performing adjudicative functions by controlling the presentation of evidence, deciding the ultimate outcome of the case, and, as pertained to Dr. Bleed, in assisting in the decision-making process by providing technical expertise. The Supreme Court held that Dr. Bleed was properly excluded from testifying at *336 the hearing and that the refusal to issue a subpoena for her testimony was correct, because when the Nebraska Evidence Rule apply, those persons performing adjudicative functions are presumptively incompetent to testify.
Finally, we find Bender v. Department of Motor Vehicles, 8 Neb.App. 290, 593 N.W.2d 27 (1999), instructive in analyzing the hearing officer's reference in the instant case to other proceedings before TERC wherein an expert allegedly violated certain professional standards. Ryan Bender argued that he was denied due process as a result of the hearing officer's refusal to seek judicial enforcement of a disobeyed subpoena. The director of the Department of Motor Vehicles, in upholding the hearing officer's refusal to invoke the district court's aid in enforcing the subpoena, stated in his administrative order that he "takes notice" of two instances in recent months where a witness had appeared in response to counsel for Bender's subpoena and she had not been called to testify; in both those instances, the witness appeared and counsel for Bender dismissed her without calling her to testify. Our court held that to refuse to enforce the subpoena when the witness disobeyed, under the circumstances, was an arbitrary and untenable decision, particularly given the basis for the director's decision, which were not facts of record before the hearing officer. "The Director's action in adding to the evidential record via his order is unusual and improper. The reliance by the Director upon facts not of record is akin to the decisionmaker taking on the role of a witness." Id. at 300, 593 N.W.2d at 34. We held that a litigant's case should be decided on its own merits from the evidence in the record, not by what his or her lawyer has or has not done in another case in the past. The actions by the director and the hearing officer were "facially a denial of due process where such facts are not in the record and Bender's counsel is given no opportunity to respond to the matter." Id. at 301, 593 N.W.2d at 34-35.
We find that the hearing officer's comments during the course of the proceedings in the instant case had a chilling effect upon Blomendahl and amounted to improper testimony by the hearing officer regarding facts not in the record such that Krusemark was effectively denied his right to procedural due process. The actions of TERC in this regard were unreasonable, and accordingly, we reverse the decision and remand the matter for further proceedings consistent with this decision. Accordingly, it is not necessary to address Krusemark's remaining assignments of error, with the exception of the jurisdiction issue below.

Jurisdiction Over Issue of Equalization.
In case No. A-00-402, the appeal for tax year 1998, Krusemark assigns as error TERC's determination that the issue of equalization was not raised by Krusemark before the Board and that therefore, TERC had no jurisdiction to determine the issue of equalization. Since the issue of jurisdiction over the issue of equalization in the 1998 tax year will affect the proceedings on remand, we will address that issue.
During the TERC hearing, TERC correctly noted that it had subject matter jurisdiction over only those issues presented to the Board. "Property Valuation Protest" (Form 422) is the standard form used in filing a protest to the Board and provides a section whereby the protesting taxpayer states the reasons for the protest. Krusemark handwrote: "Since the house was not completed, $345[,]845 is only ¾ of the valuation. I also wish you would consider removing the sales multiplier of 1.35%. I'm also attaching papers giving my reasons for making this protest." TERC had no attachments to Form 422 in the record before it and was of the opinion that Krusemark's statement in Form 422 indicated that the house should not be valued at full market value. TERC also noted that neither party had made the *337 transcript of the proceedings before the Board a part of the record before TERC.
Form 422 also provides a section wherein the names of the witnesses and a summary of the testimony at the protest hearing before the Board is noted. In the instant case, this section was filled out, in pertinent part, as follows:
Dale Krusemark appeared to give testimony. Presented comparables to County Board of Equalization. My home valued at 144.00 per square foot. These other homes average 66.60 per sq[.] ft. Showed neighboring counties comparable homes. Waynes valuation and Dakota valuations are not raising. Madison, Dixon and Dakota County value these homes at what they would bring on the market.
Krusemark argued before TERC, and now before this court, that the reference to "comparable" in this statement indicated that equalization was an issue before the Board. Krusemark also asserts that Arcadian Fertilizer v. Sarpy Cty. Bd. of Equal., 7 Neb.App. 499, 583 N.W.2d 353 (1998), stands for the proposition that in a case in which it is not clear if a board of equalization had addressed a particular issue, TERC is required to examine the record made before the board of equalization. Krusemark concedes that when it is clear that a party has failed to raise an issue before a board of equalization, a party is barred from raising the issue before TERC.
The Board asserts that although Krusemark offered purported comparables at the protest hearing before the Board, there is no evidence that the comparables were offered for the purpose of raising the issue of equalization.
In Arcadian Fertilizer v. Sarpy Cty. Bd. of Equal., supra, this court noted that Neb.Rev.Stat. § 77-1511 (Reissue 1996) stands for the general proposition that TERC has no authority to consider questions not raised before a county board of equalization. The issue in Arcadian Fertilizer was whether a question as presented to the board of equalization and a question as presented to TERC were sufficiently related in content and context to be deemed the same question at both levels. The board of equalization in Arcadian Fertilizer argued that Form 422 should be examined to determine if the issue had been raised before the board of equalization. Arcadian Fertilizer, L.P. (Arcadian), argued that its statement of reasons for appeal should not be limited to the statement set out in Form 422 but must be evaluated in the context of the proceedings before a referee and the board of equalization where, Arcadian asserted, the underlying reasons were clearly explained and set out in detail. Arcadian argued that TERC erred in refusing to permit Arcadian to supplement the record with a transcript of the proceedings before the referee. TERC had held that the refereed proceedings were irrelevant in determining what issues had been presented to the board of equalization. We held on appeal that proceedings before the referee were part of the board of equalization process and were clearly relevant to the proceedings before TERC, especially where the scope of issues previously raised before the board of equalization was an issue. Because it would be impossible to determine jurisdiction without reviewing the transcript of the refereed proceedings, it was error for TERC to deny Arcadian's motion to admit the transcript of the refereed proceedings. The matter was remanded to TERC for reconsideration of the jurisdictional issue.
In the instant case, Krusemark did not offer the transcript of the proceedings before the Board at the TERC hearing. In reviewing the Form 422 in the 1998 protest, we note that it indicates Krusemark presented "comparables" to the Board, although the form does not specifically reference the issue of equalization. However, in reviewing the Form 422 in the 1999 protest, there is likewise no specific reference to equalization; rather, reference to "comparables" is contained therein. In order *338 to properly resolve the issue of whether equalization was presented to the Board in the 1998 protest, and consequently, TERC's jurisdiction over the issue, TERC, on remand, shall allow Krusemark to supplement the record with the proceedings before the Board in the 1998 protest.

CONCLUSION
Because Krusemark was denied the right to procedural due process in the hearings before TERC, we reverse TERC's decisions of March 14, 2000, affirming the Board's determinations and valuations of Krusemark's property for the tax years 1998 and 1999, and remand this cause to TERC for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.